**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE ALLERGAN BIOCELL TEXTURED BREAST IMPLANT PRODUCTS LIABILITY LITIGATION | Case No. 2:19-md-02921 (BRM) (ESK)  **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendants Allergan Inc. and Allergan USA, Inc.'s (collectively, "Allergan") objections to and appeal of, pursuant to Federal Rule of Civil Procedure 53(f)(2) and Local Civil Rule 72.1(c)(1), Special Master Case Management Order No. 15 ("Special Master CMO 15"), entered on May 20, 2022, by Special Master Joseph A. Dickson, U.S.M.J. (ret.) ("Special Master").[1] (ECF No. 389.) Plaintiffs filed an opposition to the appeal (ECF No. 391), and Allergan filed a reply (ECF No. 393). Having reviewed the parties' submissions in connection with the appeal and having declined to hold oral argument pursuant to Federal Rule of Civil

---

[1] On April 21, 2021, the Court entered an order appointing the Honorable Joseph A. Dickson, U.S.M.J. (ret.), as the Special Master. (ECF No. 293.) Pursuant to the Order, the Special Master's decision resolving any dispute may be appealed to the Court directly in the same manner and subject to the same deadlines and standards of review as a decision of a Magistrate Judge, following Local Civil Rule 72.1(c)(1) and Federal Rule of Civil Procedure 53(f)(3)–(5). (*Id.* ¶ 4.) The Order also sets forth the briefing schedule in the event any party objects to the Special Master's decisions. (*Id.* ¶ 3.) Pursuant to the Order, parties are permitted to "object to, move to adopt, or move to modify" an order of the Special Master within 14 days of the order's entry. (*Id.*) A party opposing the objection or motion is required to file a responsive brief within 14 days of the objection or motion's filing, and the moving party "may reply to any opposition within 7 days of the day the opposition was filed." (*Id.*) On May 20, 2022, Special Master CMO 15 was entered by the Special Master. (ECF No. 388.) The Special Master granted Allergan's request for an extension to file objections to Special Master CMO 15. (ECF No. 389-1 at 13.) Accordingly, this appeal is properly before the Court.

Procedure 78(b), for the reasons set forth below and for good cause having been shown, Allergan's appeal is **DENIED**, and Special Master CMO 15 is **AFFIRMED**.

**I.    BACKGROUND**

The factual and procedural backgrounds of this matter are well-known to the parties and were previously recounted by the Court in its Opinion granting in part and denying in part Allergan's motion to dismiss. (*See* ECF No. 283.) Therefore, the Court includes only the facts and procedural background relevant to this appeal.

This litigation began as a series of actions filed in judicial districts throughout the country. (ECF No. 144 at 1.) By Order dated December 18, 2019, the United States Judicial Panel on Multidistrict Litigation transferred several of those matters to the District of New Jersey, thereby creating MDL No. 2921. (Master Complaint (ECF No. 1).) Plaintiffs allege, among other things, Allergan's BIOCELL textured breast implants and tissue expanders (collectively, "the BIOCELL implants") caused Plaintiffs to contract, or increased their risk of contracting, Breast-Implant Associated Anaplastic Large Cell Lymphoma ("BIA-ALCL"), a cancer of the immune system that develops in the area around an implant, often between the implant and the surrounding scar tissue. (*Id.* at 1.) The MDL proceeding consists of both individual cases and class actions premised on events reaching back nearly thirty years.

In April 2021, the Court appointed the Honorable Joseph A. Dickson, U.S.M.J. (ret.) as Special Master to manage and facilitate discovery of these cases. (ECF No. 293.) The parties agreed the proceeding would follow the typical bellwether paradigm for multidistrict litigation matters. (*See* Special Master CMO 12 (ECF. No 386) at 2.) As part of this process, a group of 426 Plaintiffs would each provide a Plaintiff Fact Sheet ("PFS") to Allergan. (*Id.*) Within 90 days, Allergan would respond with a Defense Fact Sheet ("DFS") relating to each Plaintiff. (*Id.*) Based

on the information obtained by these fact sheets, the parties would then select representative bellwether cases for further discovery and eventually trial. (*Id* at 3.) The parties agreed on the form and content of the PFS, but a dispute arose over the content of the DFS. (ECF No. 389 at 11.) This dispute came before the Special Master. (*Id* at 13.)

On May 20, 2022, the Special Master entered Special Master CMO 15 resolving the parties' disputes as to the contents of the DFS. (ECF No. 388.) The approved DFS requires Allergan to provide, among other things, information relating to contacts between its sales representatives and a plaintiff's treating physician, including the marketing materials the sales representative showed the physician, information the sales representatives shared with the physician regarding the safety and efficacy of the BIOCELL implants, and Allergan's training of the sales representatives in promoting the BIOCELL implants (the "Sales Representatives Disclosures"). (*See id*.) On June 10, 2022, Allergan filed its appeal, contending the burden of responding to this request at this stage of discovery would be "astronomical and disproportionate to the needs of this case." (ECF No. 389.) Allergan submits Special Master CMO 15 is clearly erroneous and contrary to settled law and requests the Court vacate the order. (*Id.* at 1, 23.) On June 28, 2022, Plaintiffs filed their opposition to the appeal. (ECF No. 391.) On July 12, 2022, Allergan filed its reply. (ECF No. 393.)

**II.    STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 53(a)(1)(C), the Court may appoint a Special Master to "address pretrial and posttrial matters." Fed. R. Civ. P. 53(a)(1)(C). The Special Master must report his findings to the court that appointed him and serve a copy of his findings on each party. Fed. R. Civ. P. 53(e). Parties may file objections to the Special Master's order, report, or recommendations. Fed. R. Civ. P. 53(f)(2). A reviewing court must decide objections to the Special

Master's factual findings and legal conclusions under the *de novo* standard of review. Fed. R. Civ. P. 53(f)(3)-(4). "The phrase 'de novo determination' . . . means an independent determination of a controversy that accords no deference to any prior resolution of the same controversy." *United States v. Raddatz*, 447 U.S. 667, 690 (1980) (Stewart, J., dissenting); *see United States v. First City Nat'l Bank*, 386 U.S. 361, 368 (1967) (observing that "review de novo" means "that the court should make an independent determination of the issues"). However, in deciding objections to procedural matters, a reviewing court may set aside the Special Master's decision only for an abuse of discretion. Fed. R. Civ. P. 53(f)(5). The Special Master's management of the discovery process "is entitled to great deference." *Schiano v. MBNA*, Civ. A. No. 05-1771, 2009 U.S. Dist. LEXIS 42167, at \*10 (D.N.J. May 19, 2009).

Pursuant to the Order Appointing Special Master dated April 21, 2021, any decisions of the Special Master are to be reviewed under the same standard as a decision of a magistrate judge. (ECF No. 128 ¶ 3 ("The Special Master's decision resolving any dispute may be appealed to Judge Martinotti in the same manner . . . as a decision of a Magistrate Judge, following Local Civil Rule 72.1(c)(1) and Rule 53(f)(3)-(5).")). Accordingly, the Court applies the same standard as it would in reviewing an appeal from a magistrate judge's decision. *See, e.g., In re Mercedes-Benz Emissions Litig.*, Civ. A. No. 16-881, 2020 U.S. Dist. LEXIS 15967, at \*14 (D.N.J. Jan. 30, 2020); *United States ex rel. Simpson v. Bayer A.G.*, Civ. A. No. 05-3895, 2021 U.S. Dist. LEXIS 20138, at \*9 (D.N.J. Feb. 2, 2021).

With respect to a district judge's review of a magistrate judge's decision, Federal Rule of Civil Procedure 72(a) states: "The district judge . . . must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Similarly, Local Civil Rule 72.1(c)(1)(A) provides "[a]ny party may appeal from a Magistrate Judge's

determination of a non-dispositive matter within 14 days" and the District Court "shall consider the appeal and/or cross-appeal and set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law." *See also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter [properly referred to the magistrate judge] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 93 (3d Cir. 1992) (describing the district court as having a "clearly erroneous review function").

The burden of showing a ruling is clearly erroneous or contrary to law rests with the party filing the appeal. *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004); *Allen v. Banner Life Ins. Co.*, 340 F.R.D. 232, 237 (D.N.J. 2022). A district judge may find a magistrate judge's decision "clearly erroneous" when it is "left with the definite and firm conviction that a mistake has been committed." *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *accord Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008). However, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)). The magistrate judge's ruling is "contrary to law" if it misinterpreted or misapplied applicable law. *Kounelis*, 529 F. Supp. 2d at 518; *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998). "Where the appeal seeks review of a matter within the exclusive authority of the Magistrate Judge, such as a discovery dispute, an even more deferential standard, the abuse of discretion standard, may be applied." *Miller v. P.G. Lewis & Assocs., Inc.*, Civ. A. No. 05-5641, 2006 U.S. Dist. LEXIS 73154, at *2–3 (D.N.J. Sept. 22, 2006); *Callas v. Callas*, Civ. A. No. 14-7486, 2019 U.S. Dist. LEXIS 17882, at *5 (D.N.J. Feb.

4, 2019) (reviewing and affirming magistrate judge's order on discovery dispute under the abuse of discretion standard); *Experian Info. Sols., Inc. v. List Servs. Direct, Inc.*, Civ. A. No. 15-3271, 2018 U.S. Dist. LEXIS 141538, at *7 (D.N.J. Aug. 21, 2018) (same). "An abuse of discretion occurs 'when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court.'" *Ebert v. Twp. of Hamilton*, Civ. A. No. 15-7331, 2016 U.S. Dist. LEXIS 157916, at *4 (D.N.J. Nov. 15, 2016) (quoting *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 115 (3d Cir. 1976)).

### III. DECISION

Allergan argues Special Master CMO 15 is clearly erroneous and contrary to settled law because requiring Allergan to collect, review, and produce individual custodial records of its sales representatives is excessively burdensome, expensive, and disproportional to the needs of the case at the fact sheet stage. (ECF No. 389 at 16–23). Plaintiffs argue the Sales Representative Disclosures called for in the DFS are standard in multidistrict litigation proceedings and necessary for informing bellwether selection. (ECF No. 391 at 6.) Plaintiffs also assert the expenses Allergan is facing are a result of Allergan's own failure to maintain a centralized database. (*Id*.)

Under Federal Rule of Civil Procedure 26(b)(1), discovery must be "relevant to any party's claim or defense and proportional to the needs of the case[.]" In determining relevance, a court considers whether the evidence has "a tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. In determining proportionality, a court weighs several factors, including:

> (1) the importance of the issues at stake in this action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the

> discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Williams v. BASF Catalysts, LLC*, Civ. A. No. 11-1754, 2017 U.S. Dist. LEXIS 122053, at *11 (D.N.J. Aug. 3, 2017) (citing Fed. R. Civ. P. 26(b)(1)). "Proportionality determinations are made on a case-by-case basis with the aforementioned factors, and 'no single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional.'" *Emps. Ins. Co. v. Daybreak Express, Inc.*, Civ. A. No. 16-4269, 2017 U.S. Dist. LEXIS 86224, at *5 (D.N.J. June 5, 2017) (quoting *Bell v. Reading Hosp.*, Civ. A. No. 13-5927, 2016 U.S. Dist. LEXIS 4643, at *4 (E.D. Pa. Jan. 14, 2016)). Because Rule 26 requires proportionality, "relevancy alone is not sufficient to obtain discovery" as the "requested discovery must also be proportional to the needs of the case." *Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.,* Civ. A. No. 12-4934, 2017 U.S. Dist. LEXIS 25099, at *6 (D.N.J. Feb. 23, 2017).

Fact sheets allow the parties to assess the strengths and weaknesses of an individual case before making bellwether selections. *See In re Abilify (Aripiprazole) Prods. Liab. Litig.*, MDL No. 16-2734, 2018 U.S. Dist. LEXIS 223798, at *3 (N.D. Fla. Oct. 29, 2018). "[T]he purpose of the fact sheets is to provide counsel for both sides with the basic information necessary to move this consolidated proceeding through the process and toward a resolution[.]" *In re Intercontinental Terminals Co. LLC Deer Park Fire Litig.*, Civ. A. No. 19-1460, 2022 U.S. Dist. LEXIS 87156, at *23 (S.D. Tex. Apr. 29, 2022). Without fact sheets, parties can be left without information about an individual case outside of the pleadings. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1233 (9th Cir. 2006).

The parties agree communications between the sales representatives and Plaintiffs' treating physicians, along with other sales representative records, are relevant and should be produced at

some stage of this proceeding. However, the dispute is whether the records should be produced for 426 Plaintiffs at the fact sheet stage of the litigation or for a smaller group of Plaintiffs after the bellwether selections are made. After hearing the parties' arguments, the Special Master ordered the relevant records be produced for each of the 426 Plaintiffs.

The Special Master's decision was neither clearly erroneous nor contrary to settled law. Communication concerning the safety and efficacy of BIOCELL implants between Allergan's sales representatives and Plaintiffs' treating physicians is essential to both the claims and defenses in this litigation. Allergan has this information and Plaintiffs will not be able to make an informed decision in selecting bellwether cases without it. The requested information is not novel and has been produced at the fact sheet stage in similar litigations.[2] Although Allergan offers a compromise to produce the requested information after the first pool of cases are selected, production of such information is useful to guide the parties' selection of the first pool of cases.

Allergan relies primarily on *In re Fluoroquinolone Products Liability Litigation* in arguing the "proportionality concerns" of this matter are more extreme and outweigh the needs of the requested discovery. MDL No. 15-2642, 2016 U.S. Dist. LEXIS 101497 (D. Minn. July 20, 2016). In that case, the district court held the defendant was not required to "provide data pertaining to physicians prescribing practices for antibiotics generally, rather than just for specific" antibiotics at the fact sheet stage because the benefits of the searches were "less-than-certain." *Id.,* at *9–10.

---

[2] *See, e.g.*, *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.,* MDL No. 2342, 2014 U.S. Dist. LEXIS 66429, at *10 (E.D. Pa. Mar. 28, 2014); *Bartolini v. Abbott Lab'ys, Inc.*, Civ. A. No. 14-847, 2015 U.S. Dist. LEXIS 183316, at *62 (S.D. Ill. Oct. 2, 2015); *In re Atrium Med. Corp. C-Qur Mesh Prod. Liab. Litig.*, 223 F. Supp. 3d 1355 (J.P.M.L. 2016); *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, 787 F. Supp. 2d 1358 (J.P.M.L. 2011); *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. & VerSys Femoral Head Prods. Liab. Litig.*, 340 F. Supp. 3d 1379 (J.P.M.L. 2018); *In Re: Biomet M2A Magnum Hip Implant Prods. Liab. Litig.*, 896 F. Supp. 2d 1339 (J.P.M.L. 2012).

*In re Fluoroquinolone* is plainly distinguishable from the current proceeding for several reasons. First, the benefits of the ordered discovery in this proceeding are not "less-than-certain" because communications between sales representatives and physicians regarding the safety and efficacy of BIOCELL implants will be helpful to bellwether selection. Second, the ordered discovery does not concern communications regarding all medical devices generally but rather communications about the specific BIOCELL implants that are the subject of this litigation.

Allergan's remaining arguments emphasize how burdensome the ordered discovery could be and how a Court managing discovery might weigh proportionality against relevance. Yet these arguments fail to show how this Court reviewing the issue on appeal would be better positioned than the Special Master, who has diligently managed this proceeding for over a year, to weigh the burdens of this discovery against the benefits.[3] *See Deluccia v. City of Paterson*, Civ. A. No. 09-703, 2012 U.S. Dist. LEXIS 35855, at *4 (D.N.J. Mar. 15, 2012) (finding the deferential standard is especially appropriate where the Special Master has managed the case "from the outset and developed a thorough knowledge of the proceedings") (internal quotations omitted). Allergan has not met its burden of showing the Special Master's decision was clearly erroneous or contrary to

---

[3] Despite the extensive briefing, arguments, certifications, and exhibits, most of which are not germane to the issue before the Court, the parties' quarrel is simply over whether to produce relevant documents now or at a later point in the litigation. Allergan believes it will be overwhelmed with fulfilling its discovery obligations because it does not have a central repository of sales representative records. Aside from the issue falling squarely under the purview of the Special Master, Allergan has yet to run a search of relevant records and rests its assertions on speculation and conjecture. The Court is confident that once the parties have engaged in this discovery in good faith, the Special Master will be responsive and well-suited to address concerns of the parties as they arise.

settled law. Accordingly, Allergan's appeal is **DENIED** and Special Master CMO 15 is **AFFIRMED**.[4]

IV. **CONCLUSION**

For the reasons set forth above, Allergan's appeal is **DENIED** and Special Master CMO 15 is **AFFIRMED**.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Date: August 9, 2022

---

[4] While Allergan has yet to run a search of the relevant records, it speculates production of such records would transform into "a years-long process." (ECF No. 393 at 1.) The Court understands Allergan is faced with extensive and lengthy discovery obligations in this proceeding. To the extent the production of communications between sales representatives and treating physicians causes delay in this proceeding, the issue should be brought before the Special Master to work with the parties and provide the necessary guidance to fulfill each parties' discovery obligations.