Joseph A. Dickson, U.S.M.J. (Ret.)
Brittany Manna, Esq.
**CHIESA SHAHINIAN & GIANTOMASI PC**
105 Eisenhower Parkway
Roseland, NJ 07068
(973) 325-1500
*Appointed Special Master*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: ALLERGAN BIOCELL TEXTURED BREAST IMPLANT PRODUCTS LIABILITY LITIGATION** | MDL No. 2921 <br> Civil Action No.: 2:19-md-2921 (BRM)(ESK) |
| This Order Relates to All Actions: <br><br> *In re Allergan Biocell Textured Breast Implant Product Liability Litigation*, MCL No. 634 | **SPECIAL MASTER CASE MANAGEMENT ORDER NO. 31** |

 This matter comes before us by way of Allergan's February 28, 2024 Motion to Shift or Share Costs associated with Allergan's production of manufacturing batch records. On March 13, 2024, Plaintiffs submitted an opposition. On March 20, 2024, Allergan submitted a reply. The Special Master and MCL court held oral argument on April 9, 2024.

### I.    INTRODUCTION

 The parties are familiar with the underlying action and claims.  Accordingly, we will recite only the relevant procedural and factual background necessary to address the disputes at

hand, namely whether Plaintiffs should share in any of Allergan's costs associated with producing manufacturing batch records.

## II.    **PROCEDURAL HISTORY**

The manufacturing batch record saga does not begin with Allergan's filing of the instant motion. The production of manufacturing batch records has a long history in this litigation dating back to at least May 12, 2021. As such, a recitation of the history surrounding the issue is warranted.

## III.    **FACTUAL HISTORY**

**Plaintiffs Superseding First Set of Requests for Production**

On May 12, 2021, Plaintiffs served its Superseding First Set of Requests for Production. *See* February 28, 2024 Declaration of Melissa A. Geist Esq., "Geist Decl." at Ex. 1. Plaintiffs Superseding First Set of Requests for Production ("Plaintiffs' First RFP's") define the relevant time period as "January 1, 1990 through the present" which "includes all documents and information relating to events within this period, even if prepared, received, or reviewed outside this period." Geist Decl. at Ex. 1, p. 9. Plaintiffs' First RFP No. 26 purportedly sought all manufacturing batch records: "ALL DOCUMENTS concerning the alleged or potential NONCONFORMITY of any RECALLED BREAST IMPLANTS to any internal or external specifications or standards." Geist Decl. at Ex. 1, p. 14.

On July 9, 2021, Allergan wrote to Plaintiffs' counsel with respect to manufacturing batch records that "[t]o the extent Plaintiffs generally seek the production of manufacturing batch records for every BIOCELL Device ever manufactured over the past 30 years, Defendants stand

on their objections." Geist Decl. at Ex. 2, p. 4. Allergan explained that the burdensome nature of the request results from the layered nature of the records. *Id.* According to Allergan, each finished BIOCELL Device will have a batch record referred to as a Device History Record ("DHR"), which may include additional batches that would also have its own DHR. *Id.* Allergan submitted that, "[t]he burden and expense associated with the production of this extraordinary volume of batch records vastly outweighs any benefit to Plaintiffs, taking into account the limited batch records that are actually relevant to these litigations." *Id.*

**Allergan's July 27, 2021 Application for a Protective Order (ECF No. 344)**

On July 27, 2021, Allergan filed a Motion for a Protective Order seeking to limit the manufacturing batch record production to the active MDL Plaintiffs who provide the lot and serial number corresponding to their devices. *See* July 27, 2021 Defs.' Ltr. Br. at 3, ECF No. 344. Allergan again highlighted the burden and cost it would face if required to produce all manufacturing batch records for all devices ever created. *Id.* at 5. In opposition, Plaintiffs state that their request for DHRs "for all lots of devices at issue" is "highly relevant" and Allergan is "without logical basis to limit" the request. *See* July 19, 2021 Pls.' Ltr. to Special Master.

**August 2, 2021 Status Conference**

On July 30, 2021, in advance of an upcoming status conference, the parties submitted a joint agenda letter to the Special Master outlining the parties' outstanding discovery disputes, which included the production of manufacturing batch records. *See* July 30, 2021 Joint Agenda Letter to Special Master, at 1.

3

On August 2, 2021, the parties appeared, via Zoom, before me and the MCL Court for a status conference. During the conference, Allergan again argued that Plaintiffs' request for all manufacturing batch records for the BIOCELL Devices is overbroad and should be limited to just the plaintiffs who have manufacturing defect claims. *See* Tr. Aug. 2, 2021, Discovery Conf., at 8:10-13; 16:13-16. Plaintiffs' counsel responded that the request for all manufacturing batch records is not overly broad because, "often times what is not documented is just as important because there are other batches, where, for example, a deviation may have been found by somebody who is a very scrupulous investigator on the quality line" and that deviation was not "documented in other places." *Id.* at 10:8-15. Plaintiffs' counsel reiterated, "we need to be able to see [all manufacturing batch records] because we can't trust that uniform procedures were actually followed." *Id.* at 10:16-17.

Allergan also described that the batch records are stored in Costa Rica, in hard copy and would need to be retrieved from storage and assembled to locate complete DHRs. *Id.* at 15:15-16:6. Allergan reiterated that the production of all manufacturing batch records would result in "enormous" cost. *Id.* at 18:20-21. Judge Harz inquired whether the Plaintiffs could go down to Costa Rica to examine the hard copy batch records, "so that the cost isn't on [Allergan]?" *Id.* at 16:7-12. Judge Harz's suggestion was not resolved.

We then proposed manufacturing batch record "sampling" as a compromise for the parties, which the Plaintiffs rejected because "sampling is problematic," "random," and "not focused on all of the products that were manufactured." *Id.* at 24:3-8.  At the end of the manufacturing batch record discussion, Allergan agreed to investigate the complexity of identifying the devices that were implanted in the United States and to produce an exemplar batch record. *Id.* at 36:4-11.

4

**September 14, 2021 Status Conference**

On September 14, 2021, the parties again appeared via Zoom for a status conference where the production of manufacturing batch records was discussed. Plaintiffs again explained that Plaintiffs "need the manufacturing records for all the devices that were sold in the US because [Plaintiffs] need to be able to track all of the manufacturing activities and all of the manufacturing quality activities" to evaluate whether there are issues "that weren't picked up on by Allergan" and that Plaintiffs or Plaintiffs' experts might view as an "important point of departure." Tr. Sept. 14, 2021 Discovery Conf., at 49:9-13. Allergan reiterated its position that Plaintiffs do not need manufacturing batch records other than for the plaintiffs who filed complaints with manufacturing defect claims. *Id.* at 50:17-20. Plaintiffs again reiterated that Plaintiffs seek all manufacturing batch records in order to evaluate "trends and patterns" in the records. *Id.* at 52:20-22. Plaintiffs suggested that it would be "easier for Allergan" to produce manufacturing batch records for all lots and batches from which devices were sold into the United States. *Id.* at 73:18-21.

**Case Management Order No. 4 (ECF No. 360)**

On October 1, 2021, the Special Master entered Case Management Order No. 4, which ordered Allergan to submit weekly reports regarding the status of its manufacturing batch record production for the 23 named plaintiffs for which Allergan has device serial numbers. *See* Special Master CMO No. 4, ECF No. 360.

In its first status report, Allergan generally stated that (1) the majority of the 23 named plaintiffs identified at least two devices, which meant the batch records for each plaintiff will be significantly more voluminous than originally anticipated, (2) Allergan requested the paper

4895-7594-2079

documents be retrieved from off-site storage in Costa Rica for Allergan's review team to review, and (3) Allergan intended to meet and confer with Plaintiffs to evaluate whether there are portions of the batch records that could be omitted from production based on relevance, such as packaging records. *See* Defs.' Oct. 4, 2021 Ltr. to Special Master.

**November 9, 2021 Discovery Conference**

On November 5, 2021, manufacturing batch record issues appeared as an agenda item for the November 9, 2021 status conference. *See* Nov. 5, 2021 Joint Agenda Ltr. to Special Master at 1. This batch record dispute arose over Allergan's proposal to narrow the portion of the batch records that it must produce to the relevant portions based upon the allegations in the master MDL Complaint. *Id.* at 2; *see also* Tr. Nov. 9, 2021 Discovery Conf., at 8:11-14:8. Plaintiffs rejected this approach arguing that "[a]ll aspects of the manufacturing process (and, thus, the batch records are relevant to Plaintiffs' claims." *Id.* Plaintiffs further submitted that they are "unwilling to foreclose the review of *all* relevant information related to the manufacturing of these recalled devices." *Id.* During the conference, Allergan explained the delay in producing batch records is because assembling the records is a "hideous process" due to the "manner in which these records are maintained." Tr. Nov. 9, 2021, Discovery Conf., at 7:20-22. Allergan again reiterated that compiling the complete batch records for all devices is going to "cost a tremendous amount of time and money." *Id.* at 14:3-4.

Additionally, at some point prior to the November 9, 2021 conference, Allergan shared a complete batch record from Costa Rica with Plaintiffs as an exemplar for Plaintiffs to review with their experts and consultants to eliminate pages of the record that were not relevant to the claims in the litigation. Tr. Nov. 9, 2021, Discovery Conf. at 16:6-18; 32:4-10. Unsurprisingly,

the attempt at compromise failed. Plaintiffs maintained their position that "every single part of [the] batch record is relevant." *Id.* at 20:12-13. Allergan cautioned that if producing the entire batch record was the mandate, Allergan would later "seek[] some sort of cost shifting situation." *Id.* at 31:20-21.

**December 15, 2021 Discovery Conference**

The production of manufacturing batch records appeared again on the December 13, 2021 agenda letter. *See* Dec. 13, 2021 Agenda Ltr. to Special Master at 2.[1] The parties appeared, in person, for a status conference on December 15, 2021. Allergan reported that it had produced eleven out of twenty-three manufacturing batch records. As an additional compromise, Allergan offered to produce all documents, pursuant to Rule 34, as they exist in Allergan's normal course of business. Tr. Dec. 15, 2021, Discovery Conf., at 97:16-19. Specifically, Allergan offered to "scan the documents" and hand everything over to the Plaintiff. *Id.* at 97:24-25. The Court inquired whether that approach was agreeable to Plaintiffs. Plaintiffs responded, "Yes. Yes. In fact, we love that. And what we'll then do is a meet-and-confer process using the 30(b)(6) and they'll teach us how to reassemble it." *Id.* at 98:7-9. Allergan's counsel agreed, "We're going to scan the documents and we're going to hand them over." *Id.* at 97:24-25.

Following the December 15, 2021 conference, the Special Master entered CMO 8, which ordered Allergan to "produce all batch records" by January 31, 2022 and to confer with Plaintiffs' counsel regarding the manner in which the batch record production would be labeled and

---

[1] Remarkably, the parties could not even agree on the format of the proposed agenda letter so the December 13, 2021 letter was not a "joint agenda" letter but instead a recitation of the parties' positions on the issues.

produced such that the production could be identified and referenced. *See* Special Master CMO No. 8, ECF No. 371 at ¶ 6.

**January 19, 2022 Discovery Conference**

During the conference, we again suggested that the parties inspect the contents of the batch record production boxes in Costa Rica such that Plaintiffs could review the boxes and determine which records are relevant and should be produced. Tr. Jan. 19, 2022, Discovery Conf., at 22:2-7. Allergan concurred that an in-person document inspection "might be easier." *Id.* at 23:2. Plaintiffs did not respond to the suggestion but instead suggested that Allergan produce the complaint file portions of the batch records located in the electronic TrackWise system in the short term while Allergan worked to produce the hard copy batch records in their entirety. *Id.* at 24:1-11; 26:23-27:7.

Allergan also acknowledged that the batch records "are important to both sides in the case" and Allergan is "equally as interested in these records for our defense." *Id.* at 38:24-39:3. Following the conference, I entered Case Management Order No. 9, which ordered Allergan to provide a proposed Order of Prioritization of the batch records that are stored in paper form and to continue with the production of the electronic portions of the batch records. *See* Special Master CMO No. 9, ECF No. 375 at ¶ 2.

Allergan submitted a proposed order which included dates by which Allergan would (1) produce electronic portions of the manufacturing batch records for the active plaintiffs, the plaintiffs diagnosed with ALCL, and named class representative and (2) provide Plaintiffs with the number of boxes of hard copy manufacturing batch records pertaining to each stage of the manufacturing process for Plaintiffs hard copy inspection. Defs.' Feb. 16, 2022 Ltr., at Ex. A.

On February 17, 2022, Plaintiffs responded to Allergan's proposed order, rejecting Allergan's proposal that Plaintiffs could inspect the boxes in person. Plaintiffs referred to the onsite inspection as "untenable." Pls.' Feb. 17, 2022 Ltr., at 2.

**April 6, 2022 Discovery Conference**

In advance of the April 2022 status conference, the parties submitted a joint agenda letter, which once again raised the "Batch Record Production/Inspection Dispute" as an agenda item. April 4, 2022, Joint Agenda Ltr., at 2. The letter also included the parties' respective positions regarding the dispute as Exhibits 10 and 11.

In Exhibit 10, Plaintiffs outlined their position that the December 15, 2021 conference made clear that Allergan would scan the contents of the batch record boxes and provide them to Plaintiffs. *See* April 4, 2022, Joint Agenda Ltr., at Ex. 10. In Exhibit 11, Allergan responded that Plaintiffs rejected Allergan's proposal to make the batch records available for inspection pursuant to Federal Rule of Civil Procedure 34. During the conference, Allergan again proposed that Plaintiffs inspect the boxes in Costa Rica pursuant to Fed. R. Civ. P. 34 because an on-site inspection is cost effective and proportional to the needs of the case. Tr. April 6, 2022, Discovery Conf., at 14:18-15:25. Allergan also argued that it would seek cost-shifting or cost sharing in connection with the production of batch records should it be required to scan and produce the hard copy batch records in Costa Rica. *Id.* at 32:24-33:3; 37:11-5. Plaintiffs again rejected the proposal of an on-site inspection and instead submitted that all manufacturing batch records should be scanned, and Plaintiffs would then review the contents of the boxes with their experts. *Id.* at 35:2-8. Allergan explained that the cost of retaining a vendor in Costa Rica to scan the records would be a timely and expensive process. *Id.* at 40:12-21; 41:25-42:1.

9

4895-7594-2079

Allergan also explained that the defense does not need every single piece of paper for its claims, instead; Allergan intended to "be selective" and "take the [records] that pertain to the plaintiffs" because "we're paying the bill." *Id.* at 45:2-8. At the end of the conference, I decided that scanning all batch records was the most efficient method while leaving open the possibility for cost-sharing or cost-shifting at a later time. *Id.* at 61:6-24.

**Case Management Order No. 10 (ECF No. 381)**

Accordingly, on April 19, 2022, I entered Case Management Order 10 ("CMO 10") and ordered Allergan to "produce the complete manufacturing batch records, electronic and hard copy, wherever and however maintained, for every plaintiff with a filed personal injury case and for whom a correct serial number has been provided as of the date of entry of this Order, and for all named putative class representatives." *See* Special Master CMO No. 10, at ¶ 1, ECF No. 381. Allergan was also ordered to (1) retain a vendor that would be responsible for scanning the hard copy manufacturing batch records, (2) organize the production by clearly identifiable boxes, and (3) meet and confer with Plaintiffs regarding the contents and organization of the batch records. *Id.* at ¶¶ 2-5. Finally, CMO 10 was entered "without prejudice to …the right of Defendants to request cost-shifting, in the future." *Id.* at ¶ 7.

In response to CMO 10, Allergan submitted a report from its scanning vendor identifying the estimated time period for completing the scanning of hard copy manufacturing batch records. May 19, 2022, Joint Agenda Ltr. to Special Master at Ex. 11. Allergan explained that the vendor it selected was the lowest cost bidder at an estimated cost of $733,935 for the estimated 5 million pages of hard copy records compared to other vendors that submitted proposals in excess of $1 million. *Id.* at 2.

10

**March 5, 2024 Discovery Conference**

The parties submitted a joint agenda for the March 5, 2024 discovery conference, and the parties agreed to a briefing schedule regarding Defendants' cost-shifting motion filed on February 28, 2024. Below is a summary of the arguments raised in Allergan's motion, Plaintiffs' opposition, and Allergan's reply. The Special Master heard oral argument on April 9, 2024.

## IV.    ALLERGAN'S ARGUMENTS

Allergan seeks an order that requires Plaintiffs (1) to reimburse Allergan for the total costs of scanning manufacturing batch records and to cover any such future costs or, in the alternative, (2) to equally share in the costs and fees incurred by Allergan in producing the manufacturing batch records.

In support of proposition (1), Allergan points to Federal Rule of Civil Procedure 34. Allergan submits that expenses associated with copying documents in response to a request for production fall on the requesting party, in this case, the Plaintiffs. Defs.' Feb. 28, 2024 Br. at 14. According to Allergan, Access, its e-discovery vendor in Costa Rica, scanned 2,014 boxes of batch records consisting of 657,751 documents and 4,102,052 pages at a cost of $736,417.78 to Allergan. *See* Declaration of Huberth Arias Zamora, "Zamora Decl." at ¶¶ 9, 12. Consilio, Allergan's domestic e-discovery vendor, also contributed to the scanning of hard copy manufacturing batch records, albeit minimally. Allergan incurred $1,305 in costs related to Consilio's scanning of hard copy manufacturing batch records. *See* Declaration of Paul Ramsey ("Ramsey Decl.") at ¶ 3.

Allergan asserts that it fulfilled its obligations under Fed. R. Civ. P. 34(b) by offering to make the batch records available to Plaintiffs for inspection and copying. *See* Defs.' Feb. 28,

4895-7594-2079

2024 Br. at 16. Allergan submits that the scanning costs it incurred were avoidable had Plaintiffs accepted its offer to inspect the documents prior to scanning the documents. *Id.* at 17.

In support of proposition (2), Allergan relies on Federal Rule of Civil Procedure 26(c) and alternatively requests that I exercise discretion to grant a protective order protecting Allergan from the "undue burden or expense" of discovery. Here, Allergan describes costs beyond scanning costs such as (a) the costs of uploading, processing, and producing the batch records, (b) the time away from their jobs that the Allergan's team of 20 employees incurred while searching for batch records in Costa Rica, and (c) the legal fees incurred by Reed Smith attorneys in connection with the identification, collection, and review of manufacturing batch records. *See* Defs.' Feb. 28, 2024 Br. at 13.

Allergan submits that Plaintiffs' refusal to accept nothing less than the entire batch record for each device resulted in only 1.1% of the more than 4.1 million pages of hard copy records relating to a device implanted in a plaintiff in the litigation. Allergan argues that ordering Plaintiffs to share in the costs would encourage Plaintiffs to be selective in the discovery they seek rather than over broadly requesting everything in Allergan's files.

## V.    **PLAINTIFFS' ARGUMENT**

Plaintiffs submit that in the two years since CMO 10, Allergan never raised the cost-shifting issue with Plaintiffs. Pls.' March 13, 2024, Opp. at p. 7.  With respect to Allergan's proposition 1 (Rule 34), Plaintiffs argue that Allergan is not entitled to relief under Rule 34 for the following reasons:

*First*, any physical inspection of the batch records would have been futile because of the complex system Allergan uses to store its batch records.

*Second*, Allergan conceded they need the batch records in order to defeat or defend against Plaintiffs' manufacturing defect claims; thus, because both parties need the records, Allergan's motion should be denied.

*Third*, "scanning" costs are not recoverable as "copying" costs under Rule 34. Plaintiffs further submit that they did not request hard copies of records nor has Allergan ever produced hard copies. Plaintiffs submit that there is a difference between scanning costs and the costs associated with making hard copies of documents at the request of a party. Plaintiffs argue that scanning permits both parties to have ready access to the documents whereas photocopying benefits only the recipient of the records. Plaintiffs also submit that the ESI Protocol requires that hard copy documents be produced in a "scanned electronic format." *See* ESI Protocol, ECF No. 194 at 5-6. According to Plaintiffs, because the scanning of records does not include the use of paper and ink or shopping of physical material, scanning costs should not be treated as copying costs.

*Fourth*, Plaintiffs argue that Allergan has not properly or appropriately set forth its costs. Instead, Allergan conflated various costs beyond just scanning costs such as the costs for (1) locating and extracting the boxes to process, (2) quality control of the scanned images, (3) indexing, (4) quality control of the indices, and (5) exporting the documents for production. Plaintiffs submit that the extra costs cannot be accurately distinguished from the actual scanning costs, which warrants a denial of the requested relief.

With respect to Allergan's proposition 2, (Rule 26(c)), Plaintiffs argue that there is no legal authority supporting a shift of costs for attorneys' fees or employee's lost time in connection with a document production. Plaintiffs point to the "American Rule" to support their argument that each litigant should pay his own attorney's fees unless a statute or contract provides

4895-7594-2079

otherwise and the general process of discovery where some employee time is necessary to respond to discovery to support their "lost time" argument. *Id.* at 8.

Plaintiffs further submit that cost-shifting is infrequently used, and the party seeking cost shifting must prove that the discovery "imposes an undue burden or expense" or that the "data is inaccessible." *Id.* at 12 (quoting *MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, No. 2:18-cv-2211-BRM-LHG, 2023 WL 4562998, at *5 (D.N.J. July 14, 2023). Plaintiffs argue that Allergan cannot claim undue burden for three reasons.

*First*, Plaintiffs submit that Allergan cannot claim "undue burden" when any burden was a product of Allergan's own recordkeeping practice not the Plaintiffs' document requests. Further, Allergan agreed to make the document production of manufacturing batch records at various stages throughout the litigation.  Plaintiffs point to defense counsel's comments on the record that for one batch record, documents were spread across 8 boxes. *See* Pls.' March 13, 2024 Opp. at Ex. D. According to Plaintiffs, the Zamora Declaration further illustrates that the disorganized manner in which the records are stored has increased the cost of review and production. *See* Zamora Decl., ¶ 5.

*Second*, Plaintiffs submit its document requests are proportional to the needs of the litigation, where the potential damages are in the hundreds of millions and potentially the billions. Plaintiffs further argue that Allergan conceded that it wants and needs the documents for proving its affirmative defenses so there is a mutual need for the documents. Therefore, the document requests are proportional to the needs of the case, particularly in light of the 5,536 individual plaintiffs and the 270 who are diagnosed with BIA-ALCL.

4895-7594-2079

*Third*, Plaintiffs also argue that the batch records are not inaccessible simply because they are poorly stored. Instead, FDA regulations require Allergan to maintain batch records in an accessible manner. 21 C.F.R. 820.180.

Plaintiffs also point to the *Zubulake* decision that pertains to cost-shifting for the production of ESI. *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280 (S.D.N.Y. 2003). Plaintiffs concede that a *Zubulake* analysis is not applicable to a paper production. Therefore, my analysis will not include the *Zubulake* factors.

Finally, Plaintiffs submit that granting any portion of the Allergan's motion would have a "major chilling effect" on future discovery processes. Plaintiffs submit that rewarding Allergan would incentivize parties to keep poor, disorganized records and allow parties responding to discovery to punish the requesting party for reasonably pursuing essential evidence.

## VI.    DEFENDANTS' REPLY

In reply, Allergan submits that its manufacturing batch records are not disorganized but instead stored according to the phases of the manufacturing process. Allergan submits that it identified the boxes that contained responsive documents and offered to compile them in a location for Plaintiffs' counsel to review and decide whether to scan all records or a portion of the records. *See* Defs.' March 20, 2024 Reply at 2. Allergan further states that it conferred with Plaintiffs regarding the storage of the records and created indices to assist in identifying records. *Id.* at 3. According to Allergan, the organization of the records, the meet and confers, and the creation of indices is sufficient to satisfy its Rule 34 obligations.

Allergan also argues that scanning costs are recoverable as copying costs because scanning is the functional equivalent of photocopying in the digital age.

15

## VII.    <u>DISCUSSION</u>

Allergan seeks relief under Rule 34 or alternatively under Rule 26(c). Pursuant to Rule 34, Allergan seeks the costs it incurred in scanning the manufacturing batch records. Pursuant to Rule 26(c), Allergan seeks expenses beyond scanning costs such as the attorneys' fees incurred in scanning and producing the batch records and the lost employee time that resulted from the production of the batch records. I will address each in turn.

## **Federal Rule of Civil Procedure 34**

Rule 34 provides that "[a] party may serve on any other party a request" to "produce and permit the requesting party or its representative to inspect, copy, test, or sample … any designated document or electronically stored information." Fed. R. Civ. P. 34(a)(1). A party who produces documents for inspection "shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." Fed. R. Civ. P. 34(b). The opportunity to inspect is one way a responding party can comply with its obligations under Fed. R. Civ. P. 34. However, producing large amounts of documents in no apparent order does not comply with the party's obligations under Rule 34. *Stiller v. Arnold*, 167 F.R.D. 68, 70-71 (N.D. Ind. 1996). Instead, "some form of table of contents or index of the materials produced should be provided." *Residential Constructors, LLC v. ACE Prop. & Cas. Ins. Co.*, No. 2:05-CV-01318-BESGWF, 2006 WL 1582122, at *2 (D. Nev. June 5, 2006). A party is not required to index every piece of paper in the file, but it should, at a minimum, contain information related to what categories of documents are contained in the different boxes. *Id.* at *3.

In general, when a production is made pursuant to Rule 34, the requesting party bears the costs associated with copying documents in response to a request for production. *Gross v.*

*Guzman*, No. 11-283928-CIV-Rosenbaum/Seltzer, 2013 WL 12091159, at *7-9 (S.D. Fl. Jan. 25, 2013); *Lightguard Systems Inc. v. Spot Devices, Inc.*, No. 3:10-cv-LRH, 281 F.R.D. 593, 607 (D. Nev. 2012). Plaintiffs' do not contest this general rule but instead argue that Allergan did not meet its Rule 34 obligations. *See* Pls. Opp'n at 27-34.

**Allergan's Storage and Production of Records**

Plaintiffs argue that Allergan's offer to permit the inspection of the manufacturing batch records did not satisfy Allergan's Rule 34 obligations because the production would have been "so disorganized as to be unusable" by the Plaintiffs. In support of this argument, Plaintiffs rely on *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001) where the Court rejected the assertion that "directing the plaintiffs to find discovery among volumes of irrelevant information complies with Federal Rules of Civil Procedure. To the contrary, producing large amounts of documents in no apparent order does not comply with a party's obligation under Rule 34." Plaintiffs also point to *Play Visions Inc. v. Dollar Tree Stores, Inc.*, No. C09-1769 MJP, 2011 WL 2292326, at *7 (W.D. Wash. June 8, 2011)("While there is nothing inherently improper in producing boxes of records (as was common practice before the creation of electronic records), Play Visions and its counsel appear not to have ensured that the documents contained in the boxes were responsive, and they made no efforts to segregate the documents.").

However, *Wagner* and *Play Visions* are readily distinguishable from this litigation. First, it is critical that Allergan did not produce a document dump. It produced exactly what Plaintiffs demanded. Also, unlike *Wagner*, Allergan did not direct Plaintiffs to "find discovery among volumes of irrelevant information" because by Plaintiffs own admission, they view the entirety of the batch records as relevant, even portions that Allergan views as irrelevant such as the

packaging records. And unlike *Play Visions*, Plaintiffs actually instructed Allergan not to segregate the documents. Plaintiffs *See* Tr. Sept. 14, 2021, Discovery Conf. at 49:9-13; 52:20-22 (Plaintiffs' counsel stating on the record that Plaintiffs "need the manufacturing records for all the devices that were sold in the US because [Plaintiffs] need to be able to track all of the manufacturing activities and all of the manufacturing quality activities" to evaluate whether there are issues "that weren't picked up on by Allergan" and that Plaintiffs or Plaintiffs' experts might view as an "important point of departure); *see also* Tr. Aug. 2, 2021, Discovery Conf. at 10:16-17 (Plaintiffs again reiterated, "we need to be able to see [all manufacturing batch records] because we can't trust that uniform procedures were actually followed); *see also* Pls.' Jan. 11, 2022 Ltr. Br. at 8 (Plaintiffs reiterated that "all manufacturing documents, from the component parts to the packaging must be produced."); *see also* Tr. April 6, 2022 Discovery Conf., at 35:2-8 (Plaintiffs arguing that all manufacturing batch records should be scanned, and Plaintiffs would then review the contents of the boxes with their experts.).

Plaintiffs also rely upon a series of cases that demonstrate when a party's Rule 34 obligations are not satisfied. *See Select Exp. Corp. v. Richeson*, No. 10-805206-CIV, 2010 WL 11461203, at *2 (S.D. Fla. Dec. 22, 2010)(the responding party produced documents that were not organized or marked as to the beginning and end of each document); *Quail Cruises Ship Mgmt. Ltd v. Agencia De Viagens CVC Tur Limitada*, No. 09-23248-CIV, 2012 WL 12949753, at *1 (S.D. Fla. Feb. 14, 2012)(the responding party offered to produce 8,000 unorganized banker boxes of records and refused to create an index); *Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 337-338 (N.D.N.Y. 2008)(responding party produced over 400,000 pages of documents without an index or organizational information); *Mizner Grand Condo. Ass'n Inc. v. Travelers Prop. Cas. Co. of Am.*, 270 F.R.D. 698, 701 (S.D. Fla. 2010)(responding party

4895-7594-2079

produced documents "bereft of context" with no way of knowing where the documents originated).

Each of those cases is readily distinguishable from the present case because  Allergan (1) provided Plaintiffs with an opportunity to inspect the manufacturing batch records, (2) participated in meet and confers regarding the content of the boxes and the organization of the materials, (3) created indices to guide Plaintiffs during the inspection process (had Plaintiffs engaged in the process), and (4) provided complete sample batch records to Plaintiffs for review in advance of the inspection.

Furthermore, Plaintiffs' analysis of those cases misdirects the focus of the issue here, which is whether Plaintiffs should share in the costs Allergan incurred due to Plaintiffs unwavering insistence that Allergan produce all manufacturing batch records. Plaintiffs argue, in essence and often, credibly, that the batch records were poorly stored and badly organized in a far off location with little thought given to their ultimate retrieval. Plaintiffs submit that they should not have to pay for this problem that Allergan created. If that was the end of it, I might be inclined to agree.[2] But Allergan argues, also credibly, that the batch record retrieval and scanning process was never necessary, to the extent that Plaintiffs demanded. They point out that 99% of the records (over 4 million pages) produced are irrelevant and will never be used by either party in this litigation. Importantly, Plaintiffs did not contest this last assertion. And perhaps most importantly, in the face of multiple opportunities to inspect and Allergan's admission that the

---

[2] And to a certain extent, I do agree. The order set forth below is intended to segregate certain of the costs incurred to prepare the documents for production.

4895-7594-2079

records were difficult to retrieve, Plaintiffs' continued insistence on the scanning of every page of the batch records.

Allergan also reminds us that it has warned of this outcome from the inception of discovery. The record is clear that Plaintiffs have, from the outset, demanded all of the batch records.

## Scanning Costs are Recoverable

Plaintiffs argue that "scanning" costs are not recoverable as "copying" costs because unlike copying, scanning does not require the expenditure of ink, paper, and shipping of paper materials. I find this argument unpersuasive. In today's digital age, scanning is the functional equivalent of photocopying, and there are costs involved. For example, in a case evaluating whether the charged imposed by an e-discovery vendor to assist in the document production are chargeable against the losing party as "fees for exemplification [or] the costs of making copies," the Third Circuit observed that "scanning of documents to create digital duplicates are generally recognized as the taxable 'making copies of material.'" *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 167 (3d Cir. 2012).

In a case where one party sought costs following the resolution of a trial, the court found that "electronic scanning of documents is the modern-day equivalent of 'exemplification and copies of paper, …'" and therefore scanning costs could be pursued. *Brown v. The McGraw-Hill Companies, Inc.*, 526 F. Supp. 2d 950, 959 (N.D. Iowa 2007); *see also Chicago Tchrs. Union, Loc. 1, Am. Fed'n of Tchrs., AFL-CIO v. Bd. of Educ. of City of Chicago*, No. 12 C 10338, 2020 WL 13608315, at *3 (N.D. Ill. May 29, 2020)(allowing the costs for scanning of hard-copy paper documents). Another court has ruled that, under Rule 34, the producing party is not entitled to

4895-7594-2079

recover the cost of searching and reviewing the records for production but is entitled to recover scanning costs at the vendor's designated rate per page. *See*, *e.g.*, *Disability L. Ctr., Inc. v. Massachusetts Dep't of Correction*, No. 07-CV-10463-MLW, 2011 WL 13365601, at *2 (D. Mass. March 28, 2011). There is no rational reason to view copying costs and scanning costs as functionally inequivalent. They are both measured by a cost per page. For instance, had Plaintiffs designated documents in boxes to be copied (or scanned) they would have been presented with a bill.

**<u>Allergan's Scanning Costs</u>**

In support of Allergan's application for scanning costs related to Access, Allergan submitted the Zamora Decl. along with thirteen invoices related to the scanning of "2,014 boxes of manufacturing batch records" consisting of "657,751 documents and 4,102,052 pages." Zamora Decl. at ¶ 9. Zamora also describes the multi-step process that Access used to scan and digitalize the documents in the boxes, which includes: (1) identifying, locating, and extracting the boxes required for scanning; (2) transferring the boxes to the processing center; (3) preparing the documents for scanning, (4) scanning the documents, (5) conducting quality control of the scanned images, (6) indexing the images, (7) conducting quality control of the indices, (8) exporting the scanned imaged, and (9) uploading the images to a secure site. *Id.* at ¶ 5. As of February 26, 2024, Allergan paid Access $736,410.78 for the scanning of manufacturing batch records, which includes the phases of the scanning process set forth in paragraph 5 of the Zamora Declaration. *Id.* at ¶ 12.

Similarly, in support of its application for scanning costs related to Consilio, Allergan submitted the Ramsey Decl., which asserts that Consilio scanned one box containing

21

approximately 2,500 hard copy manufacturing batch record documents. Ramsey Decl. at ¶ 3. Consilio charged Allergan $705.40 for scanning and $600 for Consilio's Project Manager's time in uploading and managing the collection of the records. *Id.* Allergan notes that its inclusion of total costs and expenses in the Zamora Decl. and the Ramsey Decl. is because it seeks recovery under Rule 34 and Rule 26(c), and what is recoverable under Rule 26 is broader. Defs.' Reply at 5.

On this record, Allergan should not have to bear the entire expense of the manufacturing batch record production. This obligation, however, must be tempered by the added expense created by the manner of storage of the records and the difficulties in retrieval.

According to the Ramsey Decl., Allergan incurred $705.40 in scanning expenses from Consilio. According to the Zamora Decl., Access scanned 4,102,052 pages of manufacturing batch records. The Zamora Decl. does not include the rate Access charged per page nor does it separate the scanning costs from other costs. It is unclear whether the per page cost was meant to include all categories set forth in paragraph 5 of the Zamora Declaration, or whether there are expenses that were charged separately. Before I make any final decision on cost-shifting, I require that information.

After reviewing the parties' arguments and the actual costs incurred, I find that Plaintiffs should share in the per page costs incurred in scanning the batch records in an amount to be determined after the Special Master's review of the Supplemental Declaration required hereby. As I have stated, scanning is equivalent to photocopying costs and there is no doubt that Plaintiffs would have incurred all of the photocopying costs if this production had followed the protocol of inspecting and designating documents for production pursuant to Rule 34. Once Allergan has

22

clarified exactly how the invoices in question were calculated, which will require some explanation of how each of the categories in paragraph five of the Zamora Declaration relate to the overall charges set forth on the invoices, I will issue a final ruling on the magnitude of Plaintiffs' responsibility for the invoices.[3]

## Federal Rule of Civil Procedure 26(c)

I now turn to Allergan's request for relief under Rule 26(c). Allergan argues that I should exercise discretion under Fed. R. Civ. P. 26(c) to grant a protective order shielding Allergan from the "undue burden or expense" associated with the batch record discovery. Here, Allergan seeks cost-sharing of approximately $2.08 million in production costs comprised of (1) scanning costs, (2) attorney fees related to the review and compilation of the batch records, and (3) defendants' employee time spent away from their job resulting from overseeing the manufacturing batch record production process. In opposition, Plaintiffs submit that the "American Rule" provides that each litigation pays for his own attorney's fees. *See* Pls.' March 13, 2024 Opp. at 8.

## Shifting Scanning Costs pursuant to Rule 26(c)

Although Allergan's request for cost-sharing of scanning was addressed under Rule 34, an analysis of Rule 26(c) also supports the sharing/shifting of scanning costs.

Plaintiffs were put on notice early and often that Allergan reserved the right to apply for cost shifting. The court set no immediate deadlines but gave the parties every opportunity to meet

---

[3] Counsel argued that requiring these scanning costs to be shifted to the plaintiffs in this matter will create an onerous burden on the plaintiffs. First, Plaintiffs' counsel submitted no evidence that expenses are being passed through to their clients in this MDL. Perhaps any fund that may be created for plaintiffs in the event of settlement, dispositive motion or verdict will be subject to the expenses counsel incurred in litigating the claims. The potential of that happening here should not deter a court from applying appropriate principles to reach a just decision under Federal Rules of Civil Procedure 1, 26, or 34.

4895-7594-2079

and confer. Therefore, Allergan's earlier failure to seek a protective order until its February 28, 2024 application does not bar it from recovering scanning costs. This application could not have been a surprise. Moreover, Allergan awarded the scanning job to the lowest bidder after full disclosure to the Court and Plaintiffs. *See* Declaration of Melissa Geist ("Geist Decl.") at Ex. 19.

**Attorneys Fees and Employee Time Pursuant to Rule 26(c)**

Allergan also seeks to recover the cost of its own attorneys' fees billed in connection with the batch record productions and payments for time that Allergan employees lost by working on the batch record production. The case law provides that costs attributable to retrieving and reviewing accessible data and documents are generally not subject to cost shifting. *See Cochran v. Caldera Medical, Inc.*, 2014 WL 1608664, at *2 (E.D. Pa. Apr. 22, 2014) (costs "attributable to retrieving accessible data, or to time reviewing the documents for privilege materials [are] tasks ... typically not subject to cost-sharing."); *Peskoff v. Faber*, 244 F.R.D. 54, 62 (D.D.C. 2007). Allergan has not provided me with any case law to the contrary. Nor has Allergan provided any support for the proposition that an employee's lost time spent related to compiling a document production is subject to cost-shifting. Regardless of who pays for the costs of production, both sides have an obligation to review the documents put into play. As such, Allergan's request for relief under Rule 26(c) is denied.

24

4895-7594-2079

**<u>CONCLUSION and ORDER</u>**

For the foregoing reasons, it is on this 29th day of May 2024,

**ORDERED** that Allergan's motion with respect to sharing the costs Allergan incurred from scanning the manufacturing batch records is **GRANTED** in an amount to be determined after the submission after the Special Master's review of the Supplemental Declaration required hereby.  Allergan shall submit an updated declaration that separates out the cost of the various categories set forth in paragraph five of the Zamora Declaration.

**ORDERED** that Allergan's motion with respect to the sharing or shifting of the expenses and fees incurred by Allergan's counsel and Allergan's employees in producing the manufacturing batch records is **DENIED**.

**SO ORDERED.**


_/s/ Joseph A. Dickson_____
Hon. Joseph A. Dickson, U.S.M.J. (Ret.)
Special Master


Date: June 10, 2024

4895-7594-2079