Joseph A. Dickson, U.S.M.J. (Ret.)
Brittany Manna, Esq.
**CHIESA SHAHINIAN & GIANTOMASI PC**
105 Eisenhower Parkway
Roseland, NJ 07068
(973) 325-1500
*Appointed Special Master*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: ALLERGAN BIOCELL TEXTURED BREAST IMPLANT PRODUCTS LIABILITY LITIGATION** | MDL No. 2921<br>Civil Action No.: 2:19-md-2921 (BRM)(ESK)<br><br>**SPECIAL MASTER CASE MANAGEMENT ORDER NO. 32** |
| This Order Relates to All Actions:<br><br>*In re Allergan Biocell Textured Breast Implant Product Liability Litigation*, **MCL No. 634** | |

    This matter comes before us by way of Allergan's May 24, 2024 Motion for a Protective Order in response to Plaintiffs' Notice of Deposition of Corporate Representative(s) Regarding Defendants' Document Retention and Preservation (the "Notice"). On June 14, 2024, Plaintiffs submitted an opposition. On June 27, 2024, Allergan submitted a reply. The Special Master and MCL court held oral argument on July 9, 2024.

## I. INTRODUCTION

The parties are familiar with the underlying action and claims. Accordingly, we will recite only the relevant procedural and factual background necessary to address the disputes at hand.

## II. ALLERGAN'S ARGUMENT

This dispute boils down to five out of the over 300 custodians from whom Allergan did not have any documents to produce. The five custodians are C-suite employees: Don McGhan (last known employment date 1997), Jim McGhan (last known employment date 1996), Michael Farney (last known employment date 1996), John McQuaid (last known employment date 2001), and Steve Sidwell (last known employment date 2002). Allergan Mot. at 1, fn. 2. According to Allergan, given the fact that the custodians left Allergan's predecessor company more than 20 years ago, it should not be surprising that there are no documents to be had from those custodians.

Allergan offers four arguments in support of its application for a Protective Order.

*First*, Allergan submits that the Notice constitutes improper "discovery on discovery." According to Allergan, a corporate representative should not be used to inquire into the discovery process absent a showing that "significant, relevant, and non-cumulative information has been withheld or overlooked." Allergan Mot. at 4. Allergan argues that Plaintiffs bear the burden of establishing a specific discovery deficiency. *Id.* at 5. Plaintiffs' speculation that "more must exist" is not sufficient to clear the standard for obtaining "discovery on discovery." *Id.*

*Second*, Allergan argues that the Notice seeks discovery on topics that are protected by the attorney-client privilege and work product doctrines. For example, the Notice seeks

2

documents and testimony related to Allergan's litigation hold letters (herein referred to as the "Hold" or "Litigation Hold") for other litigations, including criminal and administrative proceedings. Additionally, the Notice seeks documents and testimony related to the individuals involved in the Hold, the processes to carry out the Holds, and the related communications. Allergan argues that there is a presumption of privilege attached to litigation hold letters, and in order to overcome that presumption, Plaintiffs must make a preliminary showing that spoliation has occurred. Allergan also submits that discovery into litigation holds is irrelevant to the claims and defense in the litigation.

*Third*, Allergan submits that the Notice violates Fed. R. Civ. Proc. 26(b)(1) in that it is not proportional to the case. The Notice seeks documents and testimony related to certain topics without any temporal limitations, which would require Allergan "to prepare a corporate representative to testify about forty years of institutional knowledge on Topics wholly divorced from the merits." Allergan Mot. at 7. Allergan also submits that it has already provided most, if not all, of the information that Plaintiffs seek in the noticed corporate representative deposition topics in Allergan's Responses to Plaintiffs Superseding First Set of Requests for Production, Allergan's Fifth Supplemental Disclosure of Allergan's electronic information management system, and the prior deposition of Allergan's Corporate Representative which included testimony related to document retention and policies. Certification of Melissa A. Geist, Esq. ("Geist Cert.") at Exs. B-D.

*Fourth*, Allergan submits that the Notice is untimely in light of the Court's order that all discovery shall be completed by June 30, 2024.

### III.  PLAINTIFFS' ARGUMENT

Plaintiffs argue that a different standard applies. According to Plaintiffs, Allergan bears the burden of establishing lack of relevance, undue burden, or some other appropriate basis to deny discovery. Relying on *Hrymoc v. Ethicon, Inc.*, No. A-1083, 2021 WL 836854, at *38 (N.J. Super. Ct. App. Div. Mar. 2, 2021), Plaintiffs also argue that it need not prove spoliation in order to obtain the discovery it requests. Pls. Opp. at 11. According to Plaintiffs, the Appellate Division in *Hrymoc*, affirmed the lower court's decision that evidence of the loss or destruction of custodial documents "was relevant evidence that a jury could hear and despite the fact that the plaintiffs never argued or plead spoliation." *Id.* Plaintiffs submit that the Pennsylvania appellate court made a similar ruling in *Hammons v. Ethicon, Inc.*, 2018 PA Super. 172, 190 A.3d 1248, 1283 (2018). Plaintiffs offer three arguments in opposition to Allergan's motion.

*First*, Plaintiffs state that litigation hold notices are not privileged, and Allergan has not met its burden in establishing that the letters should be protected from disclosure. Allergan's descriptions of the litigation holds are conclusory, which is insufficient to meet the burden for a protective order. Further, Plaintiffs submit that they are entitled to know if Allergan and its predecessors have always been instructed not to destroy documents, when they were instructed, and when those instructions were lifted. Pls. Opp. at 13. Plaintiffs further argue that even if Allergan made a showing that the Holds contain privileged information, any substantive legal advice beyond the document preservation instructions could be redacted. Plaintiffs concede that there is case law supporting the idea that the disclosure of litigation holds should occur in the setting of allegations of spoliation. Pls. Opp. at 14. However, Plaintiffs insist that those cases are distinguishable because they do not address the arguments affirmed in *Hrymoc* and *Hammons*, that the loss of documents is relevant without any allegations of spoliation.

4

Plaintiffs also state that Allergan has been subject to breast implant lawsuits for decades for which Allergan had a duty to institute or enforce adequate litigation holds. Plaintiffs cite a series of cases where Inamed or McGhan, Allergan's predecessor, is a defendant regarding their breast implants. Pls. Opp. at 7. Plaintiffs argue that each of the cases required a litigation hold to preserve evidence regarding breast implants, however Allergan's privilege log only references litigation hold letters beginning in 2006.

*Second*, Plaintiffs argue that the Notice does not require the reproduction or duplication of documents previously produced. Plaintiffs also argue that the deficiencies in Allergan's custodial files goes beyond the five C-suite employees. Plaintiffs highlight three additional custodians with gaps, including one custodian who was employed by Allergan or its predecessors from 2004 through 2018, but her custodial file production is missing documents from 2004-2006, 2017, and 2018. Similarly, Plaintiffs describe another custodian who worked for Allergan or its predecessors from 2000 through 2014, and Allergan produced a single document from his custodial file. According to Plaintiffs, the production is missing thirteen years of documents. Plaintiffs point to another example of a custodian who was employed by Allergan or its predecessors from 2002 through 2012. Plaintiffs submit that there are emails where this custodian is a recipient but no documents where he is a sender. Plaintiffs state that it is "suspicious" that there is a reply email from this custodian in the production, which has the custodian as the author of the root email, but the root email was not in the production. Pls. Opp. at 5.

*Third*, Plaintiffs submit that the Notice is timely because they served the Notice on April 16, 2024, which is the day after the final confirmation of the fifth missing custodial file.[1]

---

[1] Taken in full context, I do not find the Notice untimely.

5

### IV. ALLERGAN'S REPLY

Allergan submits that Plaintiffs failed to establish material deficiencies in Allergan's production. Allergan also submits that the C-Suite employees Donald McGhan (Founder; CEO), Jim McGhan (President, CEO of McGhan Medical), Michael Farney (CEO, CFO, Treasurer and Secretary), John McQuaid (Vice President of International), or Steve Sidwell (Director of Quality Assurance) appear on over 1300 documents comprising over 48,000 pages of records. Allergan Reply at 5-6.

Allergan also submits that prior litigations are irrelevant to the dispute because Allergan is permitted to release a litigation hold when the underlying litigation has been closed or settled.

### V. STANDARD

While neither party referred to Fed. R. Civ. P. 37(e), this motion is governed, in part, by that rule, which addresses the failure to preserve electronically stored information ("ESI") and what and when spoliation sanctions may be imposed. Plaintiff argues that they are not seeking spoliation sanctions, but their argument belies this position. Plaintiff relies heavily on Judge Harz's opinion in *Ethicon*, and in that opinion, which addressed *in limine* motions preceding the trial, Judge Harz was clear that she was allowing the limited evidence to support plaintiffs' allegations of spoliation, which was actually the title of the motion. *Hrymoc v. Ethicon, Inc.*, No. BER-L-013696-14, 2017 WL 11602085 at *5-8 (N.J. Super. Nov. 3, 2017). The relevant provision of Fed. R. Civ. P. 37 was amended in 2015 to allow the court to impose sanctions "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). If the court finds

prejudice to the other party from the "loss," then the court is permitted to "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

In order to determine whether spoliation has occurred, the Court is also guided by *Bull v. United States Parcel Serv., Inc.* 665 F.3d 68, 73 (3d Cir. 2012)(finding that spoliation occurs in "situations where a party has altered, destroyed, or failed to produce evidence relevant to an issue in a case."). In *Bull*, the Court of Appeals articulated a four-factor test to determine whether a party has spoliated evidence: "Spoliation occurs where: [1] the evidence was in the party's control; [2] the evidence is relevant to the claims or defenses in the case; [3] there has been actual suppression or withholding of evidence; and, [4] the duty to preserve the evidence was reasonably foreseeable to the party." *Bull*, 665 F.3d at 73.

Notwithstanding the *Bull* and Rule 37(e) guidance, we are not conducting a spoliation analysis at this stage of the proceedings. We cite this law to demonstrate that Plaintiffs must articulate a basis for the discovery they seek now. As stated below, we agree, that the loss or destruction of files could be a basis for a spoliation argument, as it was in *Ethicon*. In order to get to a spoliation argument, however, some, but not all, of the discovery Plaintiffs seek is appropriate at this stage.

### VI.   DISCUSSION

The Notice seeks documents and testimony from an Allergan corporate representative regarding fourteen topics, which will be addressed by category:

4872-3882-3888

a. **<u>Document Retention and Document Storage (Topics 1-6)</u>**

In Topics 1-3, Plaintiffs seek documents and testimony related to Allergan's document, retention, preservation, and destruction policies from 2005 to present, and from its predecessor companies McGhan Medical Corporation and Inamed Corporation and Inamed LLC, without date restrictions.

In topics 4-6, Plaintiffs seek documents and testimony related to Allergan's document storage systems from 2005 to present, including (a) where and how hard copy and electronic documents were stored, (b) the identity of all electronic communication systems utilized and the location of where the data systems were stored, and (4) the identity of all backup systems, how those backup systems were utilized, and where and how such backups were stored and maintained. Plaintiffs also seek the same documents and testimony from Allergan's predecessor companies McGhan Medical Corporation and Inamed Corporation and Inamed LLC, without date restrictions.

While the scope of discovery is broadly construed, it is not without limits and may be circumscribed. *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). This is especially true where the discovery sought "is unreasonably cumulative or duplicative…" Fed. R. Civ. P. 26(b)(2)(C)(i). We find Topics 1-6 to be unreasonably cumulative and duplicative of Plaintiffs' September 24, 2021 Corporate Representative Deposition Notice (the "September Notice"). Geist Cert. at Ex. D. Further, the September Notice was issued without temporal restrictions, and it defined "you" and "your" as referring to the "Allergan Defendants," which likely included Allergan's predecessor companies. The September Notice sought testimony related to:

- Topic 1: "The database schema, standard reports, queries, training, backup, system configurations, application software, hardware, system software, and hosting and maintenance status, for any databases used in connection with, or containing, information potentially relevant to this action…," including databases associated with various business functions that included, among others, document management.

- Topic 3: "The Allergan Defendants' preservation of digital information, data, documents, and tangible things, in accordance with Paragraph 5(b) and (c) of the Initial CMO, including but not limited to relevant document preservation policies and litigation hold notices."

- Topic 4: "All devices, programs, applications, and systems used by employees and agents for information and communication, including, for each program, application, or system, its name, and its version numbers."

- Topic 6: "Any storage platforms, repositories, and locations not within the scope of the topics above that an employee or agent could have used to store potentially relevant information…"

- Topic 13: "Any measures You have implemented or requested in order to preserve relevant ESI, and any review undertaken to confirm compliance with such measures, from any source…"

Allergan produced its corporate witness on September 28, 2021, and he testified to the topics set forth above. Geist Cert. at Ex. D. Additionally, on July 12, 2021 (prior to the September

9

2021 Corporate Representative Deposition), Allergan served Plaintiffs with its Fifth Supplemental Disclosure of Allergan's electronic management systems, which identified relevant databases and standard operating procedures and policies by description and bates number. Geist Cert. at Ex. C. To allow this discovery again is unnecessarily duplicative and disproportional. For those reasons, Allergan is entitled to a protective order against Topics 1-6 in the Notice.

### b. Litigation Holds (Topics 7-9)

In topics, 7-9, Plaintiffs seek:

> All litigation holds relating to BIOCELL Implants that were issued by McGhan Medical Corporation, including but not limited to, litigation holds that were issued in response to civil, criminal, administrative or other matters, and for reach litigation hold identified, the following information:
>
> a.  Identification of the civil, criminal, administrative or other matter that the litigation hold was issued in response to;
> b.  The date each litigation hold was issued;
> c.  The identity of all individuals responsible for implementing each litigation hold;
> d.  How each litigation hold was implemented;
> e.  The Documents subject to each litigation hold;
> f.  All processed utilized to ensure the litigation hold was complied with;
> g.  Where Documents subject to each litigation hold were stored or maintained;
> h.  Whether any back-ups were created for Documents subject to each litigation hold and if so, where and how such back-ups were stored;
> i.  Any information that Documents subject to each litigation hold were destroyed, disposed of, or lost while the litigation hold remained in effect; the date each litigation hold concluded." Geist Cert. at Ex. A, Topic 7.

Plaintiffs seek the same documents and testimony, without time restriction, as to Inamed Corporation and Inamed LLC. Plaintiffs also seek the same documents and testimony, from 2005-present, as to Allergan. *Id.* at Topics 8-9.

As a general matter, litigation hold letters are not discoverable, especially if the party opposing their production has demonstrated that the letters include attorney-client privileged information or are subject to the work product doctrine. *Major Tours, Inc. v. Colorel*, 2009 WL 241631 at *2 (D.N.J. Aug. 4, 2009)(citing *In re EBay Seller Antitrust Litigation*, No. 07-CV-01882 (RS), 2007 WL 2852364, at *2 (N.D. Cal. Oct. 2, 2007). *Major Tours* also relies upon other out of circuit cases to support the general proposition that litigation holds are generally not discoverable. *See Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116, 1123 (N.D. Ga. 2007)(finding that defendants did not have to produce litigation hold letters because "[n]ot only is the document likely to constitute attorney work-product, but its compelled production could dissuade other businesses from issuing such instructions in the event of litigation"); *Muro v. Target Corp.*, 250 F.R.D. 350, 360 (N.D. Ill. 2007)(denying plaintiff's objection to a ruling that certain litigation hold notices are subject to the attorney-client privilege and the work-product doctrine); *Turner v. Resort Condos. Int'l*, No. 03-CV-2025 (DFH), 2006 WL 1990379, at *7-8 (S.D. Ind. July 13, 2006)(accepting defendant's assertion that its litigation hold notice is privileged and declining to order its production).

Despite this general rule, courts have also recognized the need for plaintiffs to obtain information relating to litigation hold notices, such as whether a notice was issued and what steps employees took to comply with the notice. *See, e.g.*, *In re eBay Seller Antitrust Litig.*, No. C 07 01882 JF (RS), 2007 WL 2852364, at *2 (N.D. Cal. Oct. 2, 2007) (recognizing that "[a]lthough plaintiffs may not be entitled to probe into what exactly eBay's employees were *told* by its attorneys, they are certainly entitled to know what [e]Bay's employees are *doing* with respect to collecting and preserving ESI" pursuant to the litigation hold notice); *see also Boyington v. Percheron Field Servs., LLC*, No. 3:14-CV-90, 2016 WL 6068813, at *12 (W.D. Pa. Oct. 14,

11

2016)(finding that defendant "need not produce the litigation-hold notices themselves, nor disclose any communications between its attorneys and employees" and directing plaintiffs that future inquiries "should focus on the data-preservation steps themselves, and not the contents of any communications between Defendant's counsel and its employees.").

Allergan does not deny that there are no custodial files for certain C-suite witnesses. The lack of custodial files triggers the exception to the litigation hold letter protections, and accordingly we find that Plaintiffs are entitled to make certain inquiries related to Topics 9(b)-9(j), **which are limited to the current litigation** as follows:

- 9(b): The date the Hold for this litigation was issued;

- 9(c): The identity of all individuals responsible for implementing the Hold for this litigation;

- 9(d): The specific actions that the employees were instructed to undertake to preserve and collect documents in connection with this litigation;

- 9(e): Which categories of electronic storage information Allergan employees were instructed to preserve and collect in connection with this litigation;

- 9(f): Internal Allergan processes utilized to ensure the Hold in this litigation were complied with;

- 9(g): Where documents subject to the Hold in this litigation were stored or maintained;

12

- 9(h): Whether any back-ups were created for documents subject to each litigation hold in this litigation and if so, where and how such back-ups were stored or maintained;

- 9(i): Any information that documents subject to the Hold in this litigation were destroyed, disposed of, or lost while the litigation hold remained in effect; and

- 9(j): The date the litigation hold(s) in this litigation concluded.

Plaintiffs are not permitted to inquire into litigation holds issued by Allergan from 2005 to present in response to "civil, criminal, administrative or other matters." Geist Decl. Ex. A at Topic 9. Plaintiffs are also not permitted to inquire into Topic 9(a), "the identification of the civil, criminal, administrative or other matter that the litigation hold was issued in response to." *Id.* Those topics are simply not relevant, and we also find the effort required to comply with these topics nonproportional at this stage of the litigation. See *Occidental Chemical Corporation v. 21st Century Fox America, Inc.*, 2023 WL 2300652 at *7 (D.N.J. Feb. 28, 2023)(declining to permit 30(b)(6) testimony about similar environmental discharge that took place at a site different than the site involved in the litigation).

Although not specified categories in Topic 9, we will caution Plaintiffs that they are also not permitted to inquire into:

(a) The contents of any communications between Allergan's counsel and its employees related to the litigation hold notices;

(b) The specific language used in the litigation hold notice; and

(c) How the litigation hold notices describe the legal or factual issues in the case.

c. **Change in Corporate Ownership (Topics 10-11)**

In topics 10-11, Plaintiffs seek documents and testimony about the policies and procedures relating to the "preservation, maintenance, storage, transfer, back-up or destruction" of documents in the possession of McGhan Medical Corporation at the time it was purchased by Inamed Corporation. Plaintiffs seek the same documents and testimony as to Inamed from the time Inamed was purchased by Allergan. This is not duplicative, and this information may be helpful to a determination about why the subject files are missing. It will be allowed, and the protective order application will be denied as to these topics.

d. **Lawsuits (Topics 12-13)**

In topics 12-13, Plaintiffs seek documents and testimony related to all lawsuits filed against McGhan or Inamed related to BIOCELL implants, without date restrictions. With their opposition, Plaintiffs include a list of twenty-six cases with Inamed or McGhan as defendants regarding their breast implants beginning in 1985 and spanning through 2002. Pls. Opp. at 7-9. Plaintiffs argue that "[e]ach one of these cases required a litigation hold to preserve evidence regarding breast implants," but Allergan's privilege log only references litigation hold letters beginning in 2006. The discovery of this information is untimely, perhaps duplicative and not reasonably calculated to lead to useful information in this litigation. It is also disproportional. Defendants are entitled to a protective order against Topics 12 and 13.

e. **Topic 14: Loss and/or Destruction of Custodial Files**

In topic 14, Plaintiffs seek documents and testimony about the loss and/or destruction of the custodial files of Don McGhan, Jim McGhan, Michael Farney, John McQuaid, and Steve

4872-3882-3888

Sidwell including when and how the files were lost or destroyed, the identities of the individuals involved in the loss or destruction of the files, and the efforts made to locate the custodial files or back-up files. It is unclear whether the custodial files of the five custodians were lost accidentally or inadvertently, destroyed, or simply not maintained given the passage of time. It is also unclear when the action took place (i.e. if they were destroyed – when? Or if they were not maintained given the passage of time, when did that happen?). It is also unclear whether these custodians were recipients of the litigation hold letter that applies to this case. Because I find that Plaintiffs require this information to have a fully-developed factual record on any future application for spoliation sanctions, Allergan's request for a protective order as to Topic 14 is denied.

## CONCLUSION and ORDER[2]

For the foregoing reasons, it is on this 4th day of September 2024,

**ORDERED** that Allergan's motion with respect to Notice Topics 1-8, 12 and 13 is **GRANTED**.

**ORDERED** that Allergan's motion with respect to Notice Topics 9, 10, 11, and 14 is **DENIED.** Allergan shall produce a 30(b)(6) witness who is prepared to testify to Topics 9 and 14 consistent with the parameters set forth in this Opinion on or before October 10, 2024.

**SO ORDERED.**

/s/ *Joseph A. Dickson*
Hon. Joseph A. Dickson, U.S.M.J. (Ret.)
Special Master

/s/ *Gregg A. Padovano*
Hon. Gregg A. Padovano, J.S.C.

Date: September 4, 2024

---

[2] This opinion makes no holding regarding the use of any discovery or evidence that arises from the taking of the corporate representative deposition. The use of evidence, to the extent necessary, will be addressed by *in limine* motions at the appropriate time. This opinion also makes no findings regarding spoliation of evidence and makes no application of Fed. R. Civ. P. 37(e).

16