**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: ALLERGAN BIOCELL TEXTURED BREAST IMPLANT PRODUCTS LIABILITY LITIGATION | Case No. 2:19-md-02921 (BRM) (LDW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are appeals by Plaintiffs of the June 10, 2024 Special Master Case Management Order No. 31 ("CMO 31") (ECF No. 486) and the September 4, 2024 Special Master Case Management Order No. 32 ("CMO 32") (ECF No. 513) issued by the Honorable Joseph A. Dickson, U.S.M.J. (ret.) ("Judge Dickson").[1] The appeal of CMO 31 (ECF No. 496) seeks to overturn that Order's shifting of costs related to Defendants Allergan, Inc. and Allergan USA, Inc.'s (collectively, "Allergan") scanning and production of hard copy manufacturing batch records to Plaintiffs. The appeal of CMO 32 (ECF No. 516) seeks to overturn aspects of the Order governing the scope of a deposition of a corporate representative on Allergan's document retention and preservation practices (ECF No. 516-1 at 2). Having reviewed the parties' submissions filed in connection with these appeals, for the reasons set forth below and for good cause having been shown, Plaintiffs' appeals of CMO 31 (ECF No. 496) and CMO 32 (ECF No. 516) are **DENIED**

---

[1] This Court appointed *sua sponte* the Honorable Joseph A. Dickson, U.S.M.J. (ret.), pursuant to Federal Rule of Civil Procedure 53(a)(1)(C), to serve as special master on April 21, 2021, with authority "coextensive with that of a Magistrate Judge pursuant to District of New Jersey Local Civil Rule 72.1" to "resolve all discovery disputes and discovery-related motions, according to the procedures that the special master may establish and modify as necessary." (ECF No. 293 ¶ 2 (the "Special Master Order").)

and Judge Dickson's June 10, 2024 Order (ECF No. 486) and September 4, 2024 Order (ECF No. 513) are **AFFIRMED**.[2]

## I.  BACKGROUND

The factual and procedural backgrounds of this matter are well-known to the parties and were previously recounted by the Court in its Opinion granting in part and denying in part Allergan's motion to dismiss.[3] (ECF No. 283.) Accordingly, the Court will address only the procedural history associated with these appeals.

### A.  CMO 31

CMO 31 relates to a discovery dispute stemming from Plaintiffs' Superseding First Set of Requests for Production ("RFP") ("Plaintiffs' First RFPs") dated May 12, 2021. (CMO 31 at 2.) Plaintiffs' First RFPs defined the relevant time period as "January 1, 1990 through the present" and included language to encompass documents and information "relating to events within this period, even if prepared, received, or reviewed outside this period." (*Id.* (quoting February 28, 2024 Declaration of Melissa A. Geist, Esq., at Ex. 1).) RFP No. 26 purportedly sought all manufacturing batch records ("MBRs") related to BIOCELL Implants. (*Id.*) After Allergan voiced objections about the burdensome nature of this request to Plaintiffs' counsel, Allergan filed a Motion for a Protective Order on July 27, 2021, to limit the production of MBRs "to the active

---

[2] The Court's decision in this case is a product of the facts presented and the standard of review designated in the Special Master Order, discussed *infra*, and is limited to those circumstances. *See, e.g.*, *Brower-McLean v. Jersey City*, Civ. A. No. 05-5150, 2009 WL 4828652, at *3 (D.N.J. Apr. 6, 2009) (limiting holding to "facts specific to this case"); *In re Response U.S.A., Inc.*, 288 B.R. 88, 95 n.10 (D.N.J. 2003) (same).

[3] Generally, Plaintiffs allege Allergan's BIOCELL textured breast implants and tissue expanders ("BIOCELL Implants") cause Breast-Implant Associated Anaplastic Large Cell Lymphoma ("BIA-ALCL"), a cancer of the immune system that develops in the area around an implant, often between the implant and the surrounding scar tissue. (ECF No. 283.)

MDL Plaintiffs who provide the lot and serial number corresponding to their devices," which Plaintiffs opposed. (*Id.* at 2–3.) After discussions with and submissions from the parties, which revealed the relevant records existed only in hard copy in a storage facility in Costa Rica, Allergan agreed "to investigate the complexity of identifying the devices that were implanted in the United States and to produce an exemplar batch record." (*Id.* at 4.) On October 1, 2021, Judge Dickson entered Case Management Order No. 4 (ECF No. 360), "which ordered Allergan to submit weekly reports regarding the status of its [MBR] production for the 23 named plaintiffs for which Allergan has device serial numbers." (*Id.* at 5.) Allergan's first status report provided updates on the complexity of identifying these MBRs and a desire to meet and confer with Plaintiffs to determine if aspects of the MBRs could be omitted from production. (*Id.* at 5–6.) Plaintiffs maintained every element of the MBR was relevant to their case. (*Id.* at 7.) Ultimately, in Case Management Order No. 10 ("CMO 10") (ECF No. 381), Judge Dickson ordered Allergan to produce the complete MBRs in electronic and hard copy "for every plaintiff with a filed personal injury case and for whom a correct serial number has been provided as of the date of entry of this Order, and for all named putative class representatives." (*Id.* at 10 (quoting ECF No. 381 ¶ 1).) However, CMO 10 "was entered 'without prejudice to . . . the right of [Allergan] to request cost-shifting, in the future.'" (*Id.* (quoting ECF No. 381 ¶ 7).)

Over the course of the next several months, the parties discussed progress toward producing both electronic and hard copy versions of the MBRs. (*Id.* at 7–10.) At various points, Judge Dickson and the Honorable Rachelle L. Harz[4] ("Judge Harz"), then the presiding Judge of

---

[4] Judge Harz was a Superior Court Judge in the Civil Division of the Bergen County Superior Court in New Jersey. Judge Harz retired from the bench in 2023. *See Javerbaum Wurgaft Welcomes Hon. Rachelle L. Harz, J.S.C. (Ret.)*, Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins (Jun. 5, 2023), https://www.javerbaumwurgaft.com/javerbaum-wurgaft-welcomes-hon-rachelle-l-harz-j-s-c-ret/.

the related New Jersey multi-county litigation ("MCL"), suggested Plaintiffs could conduct an in-person review of the batch records in Costa Rica to reduce production costs on Allergan. (*Id.* at 4, 8.) Acknowledging the process of compiling MBRs from the disparate places the pieces were stored was "hideous" (ECF No. 500-2, Ex. 4, at 7:20), Allergan supported the idea of an onsite inspection if Plaintiffs were unwilling to further narrow their request for every element of the MBRs (ECF No. 500-1, Ex. 12, at 80:17–81:6). But Plaintiffs ultimately rejected a proposed order from Allergan that would have included an in-person inspection by Plaintiffs. (CMO 31 at 9.) With the possibility of onsite inspection rejected and with continued issues compiling the MBRs, Allergan proposed producing the MBRs without assembling them, but simply scanning all the documents "how they are kept by the company in the normal course of business." (ECF No. 500-1, Ex. 12, at 80:17–81:6.) Allergan represented to the Court it had "produced hundreds of pages identifying for plaintiffs, here is the plaintiff, here is the batch number, here are the boxes that contain hard copy records specifically for the assembly portion of the manufacturing process, and here are all the records for the shell fabrication portion." (ECF No. 500-1, Ex. 16, at 14:3–9.) Additionally, Allergan attested it "spen[t] hours walking through . . . step-by-step all of the parts in the process of pulling together a batch record" with Plaintiffs. (*Id.* at 12:19–21.) When asked if Plaintiffs would consent to Allergan's "overproduction," Plaintiffs' counsel replied, "'Yes. Yes. In fact, we love that." (CMO 31 at 7 (quoting Hr'g Tr. Dec. 15, 2021, at 98:7–9).) Allergan also reiterated the high cost of this discovery process and previewed it would seek a cost-shifting arrangement if ordered to produce the entirety of the MBRs on multiple occasions. (*Id.* at 7, 9.) Allergan selected the vendor with a bid of $733,935 for the project. (*Id.* at 7.)

On February 28, 2024, Allergan moved the Court "(1) to order Plaintiffs to reimburse Allergan for the total costs of scanning manufacturing batch records and to cover any such future

costs or, in the alternative, (2) to equally share in the costs and fees incurred by Allergan in producing the manufacturing batch records" (the "Cost-Shifting Motion"). (*Id.* at 11.) Allergan first argued it had offered the Plaintiffs access to the manufacturing batch records for inspection and copying pursuant to Federal Rule of Civil Procedure 34(b), and, therefore, the more than $700,000 in scanning costs it incurred were avoidable and should be borne by Plaintiffs, who rejected the offer to inspect. (*Id.* at 11–12.) Alternatively, Allergan argued its costs not only for scanning the MBRs but also for processing them, removing 20 Allergan employees from their regular business to search for the records in Costa Rica, and the associated legal fees with review and production were an undue burden that the Court should remedy pursuant to Federal Rule of Civil Procedure 26(c). (*Id.* at 12.) That burden was underscored by the fact that "only 1.1% of the more than 4.1 million pages of hard copy records relat[ed] to a device implanted in a plaintiff in the litigation." (*Id.*) Allergan contended an order for Plaintiffs to share costs would encourage Plaintiffs to be more selective in future discovery requests. (*Id.*) In support of the Cost-Shifting Motion, Allergan submitted several declarations, including the Declaration of Huberth Arias Zamora, Country Manager for Access (one of Allergan's vendors in this discovery process) (the "Zamora Declaration"), which described the scanning process and listed the total cost to date of scanning the MBRs. (ECF No. 500-2, Ex. 11, at 289–92.)

Plaintiffs opposed the Cost-Shifting Motion as not required under Rule 34(b) or Rule 26(c). They argued physical inspection of the MBRs would have been futile, given Allergan's complex storage system and disorganized recordkeeping, and that Allergan conceded they also would need the records in defending against Plaintiffs' manufacturing defect claims. (*Id.* at 12–13.) Additionally, Plaintiffs contended the scanning costs Allergan incurred were not recoverable as "copying" costs under Rule 34, and Allergan had not appropriately laid out its costs, including

costs beyond scanning. (*Id.* at 13.) Additionally, Plaintiffs argued there was no legal authority to support shifting costs for attorneys' fees or employees' lost time, and these arguments were contrary to the "American Rule" of litigation costs. (*Id.* at 13–14.) Plaintiffs also asserted Allergan could not claim an undue burden or expense such that cost-shifting should be available to them, and shifting costs would have a chilling effect on future discovery processes. (*Id.* at 14–15.)

In CMO 31, Judge Dickson determined Allergan was entitled to partial payment by Plaintiffs for the costs of scanning the MBRs, pursuant to both Rule 34(b) and Rule 26(c), but not for associated attorneys' fees or employee time. (*Id.* at 25.) As relevant to this appeal, Judge Dickson found copying costs associated with requests for production made under Rule 34 are typically borne by the requesting party, provided the produced documents are organized in a cohesive way in accordance with the Rule 34. (*Id.* at 16.) Judge Dickson generally rejected Plaintiffs' attempts to argue Allergan did not comply with Rule 34 through analogy to case law because

> Allergan (1) provided Plaintiffs with an opportunity to inspect the manufacturing batch records, (2) participated in meet and confers regarding the content of the boxes and the organization of the materials, (3) created indices to guide Plaintiffs during the [proposed] inspection process . . . , and (4) provided complete sample batch records to Plaintiffs for review in advance of the inspection.

(*Id.* at 19.) Moreover, Judge Dickson determined, based on the record, that Plaintiffs' continued insistence Allergan produce all MBRs, rather than conducting an onsite inspection or otherwise limiting the production request, was the source of the high costs incurred by Allergan. (*Id.*) While Judge Dickson acknowledged Allergan's poor document storage and management practices were also a factor, he noted "the batch record retrieval and scanning process was never necessary, to the extent that Plaintiffs demanded[,]" as 99 percent of the over four million pages of records produced through this process were ultimately irrelevant to the litigation, and Allergan repeatedly "warned of this outcome from the inception of discovery." (*Id.* at 19–20.) Judge Dickson rejected Plaintiffs'

6

argument that scanning costs were not recoverable as "copying" costs under Rule 34 because "scanning does not require the expenditure of ink, paper, and shipping of paper materials," pointing to relevant Third Circuit and other District Court cases which treat the per-page cost of scanning documents as equivalent to photocopying. (*Id.* at 20–21.) Judge Dickson also found Allergan put Plaintiffs on notice that it would apply for cost-shifting and reserved its right to do so, making its Motion for a Protective Order in February 2024 timely and appropriate under Rule 26(c). (*Id.* at 23–24.) Judge Dickson reserved deciding on the proper cost allocation between the parties because the Zamora Declaration did not include "the rate . . . charged per page nor does it separate the scanning costs from other costs," and because "the manner of storage of the records and the difficulties in retrieval" added expenses to the review. (*Id.* at 22.) To that end, CMO 31 ordered Allergan to "submit an updated declaration that separates out the cost of the various categories set forth in paragraph five of the Zamora Declaration." (*Id.* at 25.)

On July 8, 2024, Plaintiffs filed an appeal of CMO 31. (ECF No. 496.) Allergan filed its opposition on July 29, 2024. (ECF No. 500.) Plaintiffs filed their reply on August 19, 2024. (ECF No. 509.)

### B. CMO 32

CMO 32 relates to a discovery dispute over certain of Allergan's over 300 discovery custodians, including five C-suite executives who left Allergan between 1996 and 2002: Don McGhan, Jim McGhan, Michael Farney, John McQuaid, and Steve Sidwell (the "C-Suite Custodians"). (ECF No. 513 at 2.) Allergan did not produce any documents related to the C-Suite Custodians, which it claimed was because of the more than 20 years that had elapsed since they left the company. (*Id.*) In response to the lack of documents relating to the C-Suite Custodians, Plaintiffs filed a Notice of Deposition of Corporate Representative(s) Regarding Defendants'

Document Retention and Preservation (the "Notice") on April 16, 2024, to ascertain whether and why records pertaining to these custodians were destroyed or missing, and Allergan filed a Motion for a Protective Order on May 24, 2024. (*Id.* at 1–2.)

Allergan made several arguments why the Notice was improper.[5] First, Allergan argued the demand for a corporate representative deposition constituted improper "discovery on discovery" for which Plaintiffs had not demonstrated a "specific discovery deficiency." (*Id.* at 2.) Second, Allergan asserted the Notice sought information covered by the attorney-client privilege and attorney work product protection, such as litigation hold letters and lists, and Plaintiffs had not made a preliminary showing that spoliation had occurred which could trump those concerns. (*Id.* at 2–3.) Third, Allergan contended the request was disproportionate to the needs of the case and, in seeking all documents without any temporal limitations, in violation of Fed. R. Civ. P. 26(b)(1). (*Id.* at 3.) In its reply, Allergan also asserted it produced "over 1300 documents comprising over 48,000 pages of records" referring to the C-Suite Custodians, and its prior litigation holds were irrelevant because Allergan could release those holds when a matter closed or settled. (*Id.* at 6.)

Plaintiffs opposed the Motion for a Protective Order, arguing "Allergan bears the burden of establishing lack of relevance, undue burden, or some other appropriate basis to deny discovery," and citing New Jersey and Pennsylvania appellate cases. (*Id.* at 4.) Plaintiffs also refuted Allergan's assertion that litigation hold notices are privileged, and asserted that even if aspects of them are, they could be redacted to enable Plaintiffs to see the document preservation instructions given to the custodians and other employees. (*Id.*) Moreover, Allergan's privilege log only lists litigation holds from 2006 and later, but Plaintiffs contended Allergan and its

---

[5] Allergan also argued the Notice was untimely, while Plaintiffs argued it was timely filed. (ECF No. 513 at 3, 5.) Judge Dickson quickly determined the Notice was timely. (*Id.* at 5.)

predecessors were the subject of lawsuits regarding its breast implants for years prior, so the litigation holds do not explain the missing records. (*Id.* at 5.) Similarly, Plaintiffs argued the Notice was not duplicative and cited other examples beyond the C-Suite Custodians where Allergan's document productions appeared to have gaps incongruous with the custodians' work histories or typical business practices. (*Id.*)

In CMO 32, Judge Dickson limited Plaintiffs' requested discovery, referencing in dicta Federal Rule of Civil Procedure 37(e), which governs potential spoliation sanctions concerning the failure to preserve electronically stored information ("ESI"), and relevant Third Circuit case law. (*Id.* at 6–7.) Judge Dickson determined Plaintiffs' requests for "documents and testimony related to Allergan's document, retention, preservation, and destruction policies from 2005 to present, and from its predecessor companies McGhan Medical Corporation and Inamed Corporation and Inamed LLC, without date restrictions" in Topics 1–3 of the Notice were "unreasonably cumulative and duplicative of September 24, 2021 Corporate Representative Deposition Notice (the "September Notice")," for which Allergan produced a corporate representative. (*Id.* at 8.) Judge Dickson noted there were no temporal restrictions in the September Notice, "and it defined 'you' and 'your' as referring to the 'Allergan Defendants,' which likely included Allergan's predecessor companies." (*Id.*) Regarding Topics 7–9 of the Notice, which sought information and documents regarding litigation holds related to the BIOCELL Implants from Allergan's predecessor McGhan Medical Corporation ("McGhan Medical"), Inamed Corporation, and Inamed LLC (collectively, "Inamed"), Judge Dickson found that, while "litigation hold letters are not discoverable" generally, "courts have also recognized the need for plaintiffs to obtain information relating to litigation hold notices." (*Id.* at 11.) Because there were no custodial files for the C-Suite Custodians, Judge Dickson allowed Plaintiffs to make inquiries

related to the dates and implementation of litigation holds, but not the litigation holds themselves, and prohibited them from inquiring into litigation holds unconnected to this litigation. (*Id.* at 12–13.) Finally, Judge Dickson rejected Notice Topics 12–13 seeking "documents and testimony related to all lawsuits filed against McGhan [Medical] or Inamed related to BIOCELL implants, without date restrictions" as untimely, likely duplicative, insufficiently targeted, and disproportional. (*Id.* at 14.)

On September 18, 2024, Plaintiffs filed an appeal of CMO 32. (ECF No. 516.) Allergan filed its opposition on October 11, 2024. (ECF No. 533.) Plaintiffs filed their reply on October 18, 2024. (ECF No. 536.)

## II.    LEGAL STANDARD

Pursuant to this Court's order appointing Judge Dickson as Special Master (ECF No. 293 ¶ 2) (the "Special Master Order"), Local Civil Rule 72.1(c)(1), applicable to magistrate judges, governs the filing of appeals and the standard of review for such appeals. Under Rule 72.1(c)(1), a magistrate judge's order on a non-dispositive issue—and, likewise, Judge Dickson's opinion and order here—may only be modified if it is determined to be "clearly erroneous or contrary to law." L. Civ. R. 72.1(c)(1)(A); *see also* 28 U.S.C. § 636(b)(1)(A) (establishing the standard of review for magistrate resolution of non-dispositive matters as clear error); *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. Oct. 15, 1998) (noting the Federal Magistrates Act, which accords with the Federal Rules of Civil Procedure and NJ Local Civil Rules, allows reversal of a magistrate judge's determination of a non-dispositive issue only where it is "clearly erroneous or contrary to law"). Courts have long held a finding of fact is clearly erroneous when, upon review of all evidence, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States ex rel. Simpson v. Bayer A.G.*, No.

CV 05-3895, 2021 WL 363705, at *3 (D.N.J. Feb. 2, 2021) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)). Similarly, a finding is contrary to law where "it misinterprets or misapplies applicable law." *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. Jan. 3, 2008) (quoting *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. Dec. 28, 1998)); *see also Juice Entm't, LLC v. Live Nation Entm't, Inc.*, Civ. A. No. 11-07318, 2022 WL 2803169, at *2 (D.N.J. July 18, 2022) (explaining a district court will only reverse a magistrate decision on pretrial matters that is clearly erroneous or contrary to law). However, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous," and the reviewing court will necessarily affirm. *United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)).

If the order of appointment of a special master does not establish an alternative standard, a special master's decisions may be set aside under an abuse of discretion standard of review. *See* Fed. R. Civ. P. 53(f)(5); *see also Conway v. State Farm Fire & Cas. Co.*, Civ. A. No. 98-0832, 1998 WL 961365, at *1 (E.D. Pa. Dec. 11, 1998) ("Issues of relevancy [] are traditionally left to the discretion of the trial court, and, consequently, '[]the standard of review in most instances is not the explicit statutory standard, but the clearly implicit standard of abuse of discretion.'"). Even then, the abuse of discretion standard is "even more deferential" than the clearly erroneous or contrary to law standard of review. *Florentino v. City of Newark*, Civ. A. No. 19-21055, 2022 WL 17820256, at *2 (D.N.J. Dec. 20, 2022) (quoting *Miller v. P.G. Lewis & Assocs., Inc.*, Civ. A. No. 05-5641, 2006 WL 2770980, at *1 (D.N.J. Sept. 22, 2006)) (affirming a magistrate judge's denial of an appeal regarding two orders, one declining to extend a discovery deadline and another denying a motion for reconsideration). Under either the clear error or abuse of discretion standard, a reviewing court extends considerable deference to a special master's determinations in a non-

dispositive issue such as a discovery dispute. *See Katz v. AT&T Corp.*, 191 F.R.D. 433, 436 (E.D. Pa. Feb. 2, 2000). Only when a decision is "arbitrary, fanciful, or unreasonable" is the abuse of discretion standard violated and a reversal appropriate. *Ebert v. Twp. of Hamilton*, Civ. A. No. 15-7331, 2016 WL 6778217, at *2 (D.N.J. Nov. 15, 2006) (quoting *Lindy Bros. Builders, Inc., of Phila., et al., v. Am. Radiator & Standard Sanitary Corp., et al.*, 540 F.2d 102, 115 (3d Cir. 1976). In other words, an abuse of discretion is "a clear error of judgment, and not simply a different result which can arguably be obtained when applying the law to the facts of the case." *Allen v. Banner Life Ins. Co., et al.*, 340 F.R.D. 232, 237 (D.N.J. Jan. 4, 2022) (quoting *Tracinda Corp. v. Daimler Chrysler AG*, 502 F.3d 212, 240 (3d Cir. 2007)). Indeed, a party arguing abuse of discretion carries a heavy burden of proof. *Id.*

## III.   DECISION

### A.   CMO 31

Plaintiffs ask the Court to vacate and overturn CMO 31 because they argue Judge Dickson's determination that Plaintiffs should share in Allergan's scanning and production costs for the MBRs is "clearly erroneous and contrary to law." (ECF No. 496-1 at 1.) Allergan opposes, arguing Plaintiffs have not demonstrated error in CMO 31 under any potentially applicable standard of review. (ECF No. 500 at 17.)

### 1.   Challenges to CMO 31's Findings of Fact

Plaintiffs argue Judge Dickson made erroneous findings of fact regarding the negotiations between the parties over production of the MBRs and Allergan's ultimate decision to produce all MBRs "regardless of their relevance and burden" that merit reversal. (*Id.* at 19.) Plaintiffs contend the record makes clear Allergan agreed to "produce all batch records of named plaintiffs and class representatives," narrowed from Plaintiffs' original request, as memorialized in Case Management

Order No. 3 ("CMO 3") (*id.* at 6), but later proposed instead to "overproduce" the MBRs by scanning all records contained in boxes in its storage facilities to account for "the disastrous state of its own recordkeeping" and after Allergan missed several production deadlines in order to reduce its own burden (*id.* at 20–21).[6] Yet, contrary to Plaintiffs' view of the procedural record, CMO 31 characterized the decision to produce all MBRs as stemming from Plaintiffs' refusal to compromise. (*Id.* at 19–22.)

Plaintiffs also argue CMO 31 improperly finds that Plaintiffs refused to compromise on the scope of discovery, when in fact "Plaintiffs accepted a gigantic compromise [in accepting the overproduction of the MBRs] of (a) taking responsibility for the expenses of maintaining the records . . . ; (b) translating them from Spanish, (c) reviewing and analyzing them, and (d) piecing them together to identify the relevant documents." (*Id.* at 22.) Additionally, Plaintiffs point to several examples from the discovery negotiations to argue Allergan failed to provide Plaintiffs and the Court with sufficient information to assess the production burden and relevance of the records, and Allergan only belatedly sought a protective order, without ever meeting and conferring with Plaintiffs over production cost issues. (*Id.* at 22–23.)

Additionally, Plaintiffs contest Judge Dickson's finding that Allergan satisfied its Rule 34 obligations by "offering Plaintiffs' counsel a chance to inspect the batch records at its facilities in Costa Rica" and providing indices and sample batch records. (*Id.* at 23.) Plaintiffs assert Allergan's offer for inspection was "disingenuous" and was acknowledged as such by both Judge Dickson and Judge Harz because of the disorganized manner in which the records were kept. (*Id.* at 24.) Further, Plaintiffs contend the lengthy time it took for Allergan to compile eleven complete batch

---

[6] Plaintiffs assert Allergan's disorganized recordkeeping practices for the MBRs were in violation of regulatory requirements from the Food & Drug Administration to keep such records "reasonably accessible." (ECF NO. 496-1 at 20 (quoting 21 C.F.R. § 820.180).)

records belies the finding "that Plaintiffs' counsel could have simply gone to Costa Rica to find the documents needed[.]" (*Id.* at 25.) Plaintiffs also refute the finding in CMO 31 that Allergan provided Plaintiffs with an exemplar of a complete MBR in the fall of 2021 because Allergan provided only "an exemplar in Spanish and unrelated to any plaintiff . . . without explanation." (*Id.*) Plaintiffs argue Judge Dickson's remarks at a hearing on November 9, 2021, stating, "at this point, I would hope that [Allergan] would be closer to having a couple ready to go, full record" confirm that no complete exemplar was ever provided. (*Id.* at 26 (quoting Nov. 9, 2021 Hr'g Tr. at 17:11–14).) The result, Plaintiffs argue, is erroneous factual findings that lead CMO 31 to contravene settled law "that a requesting party should not bear the costs that arise from how a defendant chose to keep its own records" and improperly shift costs for Allergan's failure to "maintain organized, easily accessible files." (*Id.* at 27–28 (citing *AB Joint Venture v. United States*, 75 Fed. Cl. 432, 440 (2007); *Wesley v. Muhammad*, Civ. A. No. 05-5833, 2008 WL 4386871, at *5 (S.D.N.Y. Sept. 17, 2008); *Vind v. Prudential Ins. Co. of Am.*, Civ. A. No. 07-3564, 2009 WL 10673372, at *5 (C.D. Cal. Oct. 13, 2009); *Nowak v. Lexington Ins. Co.*, Civ. A. No. 05-21682, 2006 WL 3613764, at *3 (S.D. Fla. June 12, 2006); *Sung Gon Kang v. Credit Bureau Connection, Inc.*, Civ. A. No. 1:18-01359, 2020 WL 1689708, at *6 (E.D. Cal. Apr. 7, 2020)).) Instead, Plaintiffs assert CMO 31's cost-shifting based on this factual record "will encourage other businesses to maintain poor records in the hopes of undermining discovery." (*Id.* at 30.)

In opposition, Allergan disputes CMO 31's factual findings are contradicted by the record such that this Court must find them clearly erroneous. (ECF No. 500 at 20.) Allergan calls Plaintiffs' assertion that Allergan pressed for production of all the MBRs "a stunning and brazen about-face" based on the hearing transcripts related to this dispute, which Allergan contends show it was Plaintiffs who continually insisted all MBRs be produced. (*Id.* at 20–21.) Allergan also

refutes Plaintiffs' view that the hard copy MBRs were in a state of disarray, making its offer to allow onsite inspection non-compliant with Rule 34. (*Id.* at 21–22.) Allergan argues these records are organized "in a manner that makes sense for Allergan's business purposes," and Rule 34 does not require Allergan to reorganize the MBRs to fit Plaintiffs' purposes. (*Id.* at 22.) Moreover, Allergan asserts Judge Dickson rightly noted Allergan's attempts to facilitate an onsite inspection of the records by Plaintiffs, including "preparing an index for the inspection that identified each of the more than 1,800 boxes that contained Plaintiffs' batch records" and walking Plaintiffs through a complete MBR and the process for compiling one over multiple videoconferences. (*Id.* at 22–23.) Allergan also argues Plaintiffs cite comments by Judge Dickson and Judge Harz questioning the feasibility of an onsite inspection out of context, and the comments in fact reflected Plaintiffs' statements "that they would just scan the entirety of the boxes rather than" removing only the relevant files. (*Id.* at 24–25.) In Allergan's view, these statements also undercut Plaintiffs' argument that the time it took Allergan to compile complete MBRs shows onsite inspection was infeasible, as Plaintiffs had already indicated they would not conduct a relevancy review onsite, but rather scan every document. (*Id.* at 26.) As a result, Allergan argues Plaintiffs' complaint that the batch records as produced were "unusable" because Allergan only provided indices to identify records related to filed Plaintiffs is a "non-starter," as Plaintiffs repeatedly asked for "every batch record for every Biocell device ever manufactured" and "got exactly what they asked for." (*Id.* at 27.)

In its reply, Plaintiffs assert that "facts are reviewed *de novo*" on appeal from a Special Master and reiterate the aspects of CMO 31 they found contrary to the procedural record. (ECF No. 509 at 2–3.) In particular, Plaintiffs argue the decision to scan the contents of all boxes containing MBRs, rather than selecting the boxes containing only Plaintiffs' batch records, was not their desired result but was "*necessary* for Allergan after having missed Court deadlines to

produce relevant documents." (*Id.* at 5.) Plaintiffs also repeat they "absorb[ed] the significant time and cost burdens" of assembling the relevant MBRs and storing the irrelevant ones because of Allergan's overproduction, and the index the Special Master ordered Allergan to produce alongside the MBRs was not completed until August 2, 2024. (*Id.* at 6.) Beyond the compromise Plaintiffs claim they made to narrow their discovery request to MBRs for only Plaintiffs and class representatives (reflected in CMO 3), Plaintiffs also assert they proposed several other compromises CMO 31 does not credit. (*Id.* at 6–7.) Plaintiffs again fault Allergan for not moving for a protective order on the issue of cost and waiting nearly two years to file the Cost-Shifting Motion. (*Id.* at 7.) Additionally, Plaintiffs contest Allergan's argument that it organized the MBRs according to its business needs, pointing to the procedural record and statements by Allergan's counsel about the complexity of its recordkeeping system, which Plaintiffs also contend belies Allergan's position that an onsite inspection was feasible. (*Id.* at 8–11.)

As the outset, this Court reaffirms that findings of fact are reviewed for clear error, since the order appointing Judge Dickson as Special Master (ECF No. 293 ¶ 2) determined appeals of the Special Master would be governed by L. Civ. R. 72.1(c)(1), which in turn sets the standard of review for factual findings as "clearly erroneous," L. Civ. R. 72.1(c)(1)(A). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bayer A.G.*, 2021 WL 363705 at *3 (quoting *Anderson*, 470 U.S. at 573) (alteration in original). Upon review of the record, the Court finds Judge Dickson's factual determinations, made with the benefit of deep knowledge of and involvement in the parties' discovery process, were not clearly erroneous.[7]

---

[7] As discussed throughout this opinion, the Court's review is guided by the deferential standard applied pursuant to the Special Master Order's reference to L. Civ. R. 72.1(c)(1)(A). As this Court

On the issue of why Allergan produced the volume of MBR documents it did, it is clear from the record that Plaintiffs initially requested "All DOCUMENTS concerning the alleged or potential NONCONFORMITY of any RECALLED BREAST IMPLANTS to any internal or external specifications or standards" (ECF No. 500-1, Ex. 1, at 14), which the parties agree called for the MBRs of nearly every BIOCELL device from 1990 to the present. (ECF Nos. 496-1 at 4; 500 at 2–3.) Through letter briefings and conferences with Judge Dickson and Judge Harz, Plaintiffs initially maintained the necessity of obtaining the full scope of their production request for their class action and manufacturing defect claims. (ECF Nos. 500-2, Ex. 1, at 37:16–39:7; 500-1, Ex. 4, at 10:1–23, 25:14–17.) In a September 14, 2021 conference, Plaintiffs offered to narrow their request to only the batch records "from which product was sold into the United States" (ECF No. 496-1 at 6 (quoting Sept. 14, 2021 Hr'g Tr. at 68:9–21)), but they continued to advocate that "every single part of that batch record [itself] is relevant" based on a review of "two exemplars" at a November 9, 2021 conference[8] (ECF No. 500-2, Ex. 4, at 20:1–13). On December 15, 2021, Allergan told Judge Dickson and Judge Harz they had assembled and produced 11 of the

---

has not reviewed the facts *de novo*, it makes no statement about what conclusions it might have drawn under that standard. Indeed, the Court must affirm the Special Master "[w]here there are two permissible views of the evidence, [as] the factfinder's choice between them cannot be clearly erroneous." *Waterman*, 755 F.3d at 174 (citing *Anderson*, 470 U.S. at 574).

[8] These statements from Plaintiffs' counsel at the November 9, 2021 conference indicate Plaintiffs were provided with useable exemplars of a compiled MBR, as Plaintiffs relied on these two exemplars to argue against narrowing the production. Indeed, Plaintiffs agreed with Allergan that the MBRs included records regarding packaging and assembly but argued these were relevant to their claims. (ECF No. 500-2, Ex. 4, at 13:7–9 (Allergan's counsel discussing sections of the batch records relating to assembly and packaging), 20:14–23 (Plaintiffs' counsel discussing the relevance of batch records to determining if debris discussed in Plaintiffs' complaint "comes from the packaging, the person . . . handling the mandrels, from the person handling the scrubbing, from the person handling . . . the ovens")).

23 proposed initial MBRs but were concerned about the lengthy process of assembling each batch record from the disparate boxes in which they were stored, and proposed there were

> [O]nly . . . two options going forward[:] One; the parties either agree to some subset of those batch records that could be produced, and that could be done in a much quicker manner. . . . Or two; ***I will need to go back to Rule 34 which allows us to produce the documents, how they are kept by the company in the normal course***[, in other words] we could literally produce all of the batch records in a much quicker and expedited fashion if we didn't go through this sort of what I call the organizational piece . . . . We would be overproducing batch records[.]

(ECF No. 500-1, Ex. 12, at 80:17–81:6 (emphasis added).) As Judge Dickson noted in CMO 31, Plaintiffs' response to the proposal to produce all documents, without first reconstituting each MBRs, was enthusiastic: "Plaintiffs responded, 'Yes. Yes. In fact, we love that. And what we'll then do is a meet-and-confer process using the 30(b)(6) and they'll teach us how to reassemble it.' Allergan's counsel agreed, 'We're going to scan the documents and we're going to hand them over.'" (ECF No. 486 at 7 (quoting Tr. Dec. 15, 2021, Discovery Conf., at 98:7–9, 97:24–25).)

On this record, Judge Dickson's determination that the mass production of the MBRs was a result of Plaintiffs' refusal to agree to exclude aspects of batch records is not clearly erroneous. Plaintiffs' continued request for complete MBRs led to a fork in the road. Plaintiffs were given a choice between waiting for Allergan to assemble the records or getting access to all the documents quickly, without reorganizing by Allergan, and they chose the latter. While Plaintiffs argue Judge Dickson did not credit their willingness to compromise on other aspects of the MBR discovery, such as agreeing to assemble the MBRs themselves, Judge Dickson determined Plaintiffs' refusal to limit production to only portions of the MBRs made Plaintiffs' subsequent compromises necessary. (ECF No. 486 at 19–20.) Similarly, Judge Dickson acknowledged Plaintiffs' credible arguments that the MBRs suffered from usability issues—contrary to Plaintiffs' contentions—but understood the disorganization as partly a consequence of Plaintiffs' decision to press for complete

18

MBRs, even when Allergan raised the logistical hurdles of assembling those records in a timely manner. (*Id.* at 19.) While another court might reach a different conclusion on these facts, Judge Dickson's interpretation is a "permissible" one, and therefore "cannot be clearly erroneous." *Waterman*, 755 F.3d at 174 (quoting *Anderson*, 470 U.S. at 574.)

Additionally, Judge Dickson's determination that Allergan's offer for Plaintiffs to inspect the MBRs in Costa Rica satisfied Rule 34 is not clearly erroneous. Rule 34 provides a means for a party to request its opponent "produce and permit the requesting party or its representative to inspect, copy, test, or sample" documents or tangible things. Fed. R. Civ. P. 34(a)(1). A responding party producing documents pursuant to Rule 34 "shall produce them as they are kept in the usual course of business or shall organize and label them to correspond to the categories in the request." *Residential Constructors, LLC v. ACE Prop. & Cas. Ins. Co.*, Civ. A. No. 2:05-01318, 2006 WL 1582122, at *2 (D. Nev. June 5, 2006). These requirements apply equally where a responding party offers inspection to comply with a discovery request. *See Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 611 (D. Neb. 2001). "A party choosing to produce documents as maintained in the ordinary course of business 'bears the burden of demonstrating that the documents made available were in fact produced consistent with that mandate,' . . . [i.e.] maintaining the 'internal logic reflecting [their] business use.'" *Laboy v. Quality Auto. Servs., Inc.*, Civ. A. No. 21-2501, 2023 WL 10354091, at *3 (E.D.N.Y. June 20, 2023) (quoting *S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 409 (S.D.N.Y. 2009)) (finding defendants' offer for plaintiff to inspect 18 crates of documents containing all dispatch records and payment sheets did not meet Rule 34 requirements where plaintiff sought only records relevant to his employment). Typically, courts require "some kind of organized, indexed fashion" of presenting documents to satisfy Rule 34. *Id.* at *4 (quoting *Rahman*

*v. The Smith & Wollensky Rest. Grp., Inc.*, Civ. A. No. 06-6198, 2009 WL 773344, at *4 (S.D.N.Y. Mar. 18, 2009)).

Here, when Allergan proposed Plaintiffs conduct an onsite inspection of the records as a means to avoid fully reproducing all the documents, Allergan represented to Judge Dickson it had "produced hundreds of pages identifying for plaintiffs, here is the plaintiff, here is the batch number, here are the boxes that contain hard copy records specifically for the assembly portion of the manufacturing process, and here are all the records for the shell fabrication portion." (ECF No. 500-1, Ex. 16, at 14:3–9.) And while Allergan may have conceded their storage of documents was "hideous" for the purposes of responding to Plaintiffs' request (ECF No. 500-2, Ex. 4, at 7:20), Allergan consistently maintained it had a means of identifying where documents resided, and it "spen[t] hours walking through . . . step-by-step all of the parts in the process of pulling together a batch record" with Plaintiffs (ECF No. 500-1, Ex. 16, at 12:19–21). From this record, Judge Dickson reasonably concluded Allergan had presented a legitimate offer for Plaintiffs to inspect the records in Costa Rica and had a means of reasonably facilitating that search, based on how Allergan maintained its files. Moreover, as discussed above, the record demonstrates Plaintiffs maintained their desire to obtain all MBRs for current and future class claims, and the discussion of an onsite inspection versus scanning was in the context of that request. For example, Judge Dickson asked Plaintiffs' counsel, "regardless of whether every piece of paper in the box is related to a plaintiff that currently is in this case, do you want every piece of paper in the box?" (*Id.* at 39:17–20.) Counsel's response was "Yes. They all relate to our claims[.]" (*Id.* at 39:21–22.) Because Judge Dickson's findings are not clearly erroneous, the Court will not overturn them.

## 2. Challenges to CMO 31's Conclusions of Law

Plaintiffs also argue CMO 31 should be reversed because it improperly applied the legal standards for Rules 34 and 26, regardless of whether a *de novo* or contrary to law standard applies. (ECF No. 496-1 at 30.) Regarding Judge Dickson's Rule 34 analysis, Plaintiffs assert Rule 34 allocates the cost of "searching and reviewing records for production" to the responding party, which includes "the costs of . . . scanning, and [B]ates stamping them." (*Id.* at 30–32.) Because Plaintiffs argue applying Bates stamps to the documents cannot be separated from scanning the documents, "the cost to scan cannot be segregated and charged to Plaintiffs." (*Id.* at 32 (citing *W Holding Co. v. Chartis Ins. Co. of Puerto Rico*, 293 F.R.D. 68, 72 (D.P.R. 2013); *Irwin Seating Co. v. Int'l Bus. Machines Corp.*, Civ. A. No. 1:04-568, 2008 WL 1869055, at *3 (W.D. Mich. Apr. 24, 2008); *Oracle Am., Inc. v. Google Inc.*, Civ. A. No. 10-03561, 2012 WL 3822129, at *3 (N.D. Cal. Sept. 4, 2012)).) Additionally, Plaintiffs contend the scanning costs were incurred because of Allergan's own proposal on how to fulfill its Rule 34 obligations "and are entirely different in nature from the costs of making photocopies at the insistence of a requesting party." (*Id.* at 33.) Plaintiffs also assert Allergan's productions were not compliant with Rule 34 because they produced voluminous documents in "no apparent order" (*id.* at 31 (quoting *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001))), which CMO 31 acknowledged, yet Judge Dickson nonetheless found cost-shifting was warranted (*id.* at 32–33). Regarding Rule 26, Plaintiffs argue CMO 31 determined cost-shifting the scanning costs was permissible under Rule 26(c) without considering the Rule 26(b) proportionality factors or the cost-shifting factors laid out in *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280 (S.D.N.Y. 2003). (*Id.* at 34–35.) Plaintiffs argue these factors[9] weigh against shifting production costs for the MBRs onto them because the records are

---

[9] "The *Zubulake* factors are: (1) the extent to which the request is specifically tailored to discover relevant information; (2) the availability of such information from other sources; (3) the total cost

central to Plaintiffs' manufacturing defect claims and proportional to the needs of the case, the amount in controversy "could reach multiple billions of dollars" across the cases, Allergan's resources dwarf Plaintiffs', and the potential impact of the litigation is significant. (*Id.* at 35–40.)

Allergan disagrees, arguing Judge Dickson's holdings on Rule 34 and Rule 26(c) are proper. Allergan argues the requesting party is responsible for scanning costs of production pursuant to Rule 34, and Allergan discharged its obligations under Rule 34. (ECF No. 500 at 16–20.) Pointing to cases it attests stand for the proposition that Rule 34 "places the burden of inspecting and copying on the moving party," Allergan asserts it essentially stepped into Plaintiffs' shoes after they rejected its offer to inspect the MBRs onsite, pursuant to Rule 34, and incurred costs on Plaintiffs' behalf. (*Id.* at 18–19.) Further, Allergan contends courts recognize "that in today's digital age, scanning is the functional equivalent of photocopying," and related costs are therefore recoverable under Rule 34. (*Id.* at 19 (citing *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 167 (3d Cir. 2012); *U.S. ex rel. Dekort v. Integrated Coast Guard Sys., LLC*, Civ. A. No. 3:06-1792, 2013 U.S. Dist. LEXIS 65132, at *10 (N.D. Tex. Mar. 27, 2013); *Brown v. McGraw-Hill Cos.*, 526 F. Supp. 2d 950, 959 (D. Iowa 2007)).) Regarding Rule 26(c), Allergan argues this rule gives courts wide latitude to determine whether, based on good cause, cost-shifting is appropriate to protect a party from "undue burden or expense." (*Id.* at 28 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978); *Hancock v. Credit Pros Int'l Corp.*, Civ. A. No. 2:20-02826, 2021 U.S. Dist. LEXIS 131055, at *18 (D.N.J. July 13, 2021)).) Based on Judge

---

of production, compared to the amount in controversy; (4) the total cost of production, compared to the resources available to the respective parties; (5) the relative ability of each party to control costs and its incentive to do so; (6) the importance of the issues at stake in the litigation; and (7) the relative benefits to the parties of obtaining the information." (ECF No. 496-1 at 36 n.12 (citing *France v. Chippewa Cnty.*, No. 2:20-cv-248, 2021 WL 11431784, at *2 (W.D. Mich. Nov. 22, 2021)).)

Dickson's intimate involvement with the case, including the ongoing debate over how to produce the MBRs and Plaintiffs' continued push for all MBRs, Allergan argues the requisite good cause existed. (*Id.* at 28–29.) Allergan also refutes Plaintiffs' contention the *Zubulake* factors or the Rule 26(b) proportionality factors apply. (*Id.* at 29–31.) Allergan argues *Zubulake* is inapposite, as courts have consistently held it applies only to electronic discovery, not production of physical documents. (*Id.* at 30 n.10.) Allergan also contends that, because proportionality is not mentioned in Rule 26(c), it cannot be a requirement of the Rule, even if some courts have considered Rule 26(b) in the context of 26(c). (*Id.* at 30–31.) Finally, Allergan asserts Plaintiffs' references to the general presumption the responding party bears the compliance costs does not negate the import of Rule 34 or the Court's own discretion to shift costs to protect parties. (*Id.* at 31–33.)

In reply, Plaintiffs reiterate their view that CMO 31 improperly failed to apply the Rule 26(b) proportionality factors, and that cases discussing the *Zubulake* factors are relevant because they closely track the proportionality factors. (ECF No. 509 at 12–13.) Plaintiffs note Allergan has failed to assert the proportionality factors support the outcome of CMO 31 and argue Allergan's references to the Special Master's broad discretion in managing discovery show only that the wrong legal standard was applied, which constitutes an abuse of discretion. (*Id.* at 13 n.9.)

Because discovery disputes are "within the exclusive purview of the Magistrate Judge," such that he or she is authorized to use discretion, *Sanchez Lara v. Costco Wholesale Corp.*, Civ. A. No. 21-14114, 2024 WL 4785008, at *2 (D.N.J. Nov. 14, 2024), and the Special Master Order designated that Judge Dickson would be governed by the same standard as a magistrate judge on appeal, "the decision will be reversed only for an abuse of discretion," *Rhett v. New Jersey*, Civ. A. 07-1310, 2007 WL 1456199, at *2 (D.N.J. May 14, 2007); *see also Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 521 (D.N.J. 2008) (applying abuse of discretion on appeal of spoliation decision);

*Sanchez Lara*, 2024 WL 4785008 at *3 (applying abuse of discretion on appeal of decision to permit party's supplemental expert report); *Aruanno v. New Jersey*, Civ. A. No. 21-5895, 2024 WL 4063774, at *3 (D.N.J. Sept. 5, 2024) (applying abuse of discretion on appeal of magistrate's rejection of plaintiff's request for court-appointed counsel). Only when a decision is "arbitrary, fanciful, or unreasonable" is the abuse of discretion standard violated and a reversal appropriate. *Ebert*, 2016 WL 6778217 at *2 (quoting *Lindy Bros.*, 540 F.2d at 115).

Here, Plaintiffs have failed to demonstrate an abuse of discretion on the part of Judge Dickson in the application of Rule 34 or Rule 26(c). Regarding Rule 34, Judge Dickson reviewed the factual history and Plaintiffs' supporting citations and found them distinguishable because, "by Plaintiffs['] own admission, they view the entirety of the batch records as relevant, even portions that Allergan views as irrelevant such as the packaging records. And unlike [the party in] *Play Visions*[ *v. Dollar Tree Stores, Inc.*, Civ. A. No. 09-1769, 2011 WL 2292326, at *7 (W.D. Wash. June 8, 2011)], Plaintiffs actually instructed Allergan not to segregate the documents." (ECF No. 486 at 17–18.) Judge Dickson also determined Allergan was compliant with Rule 34 through its offer for onsite inspection, discussed *supra*. Nor was Judge Dickson's finding that scanning costs were recoverable as copying costs under Rule 34 contrary to law. *See Kounelis*, 529 F. Supp. 2d at 518. As noted in CMO 31, several courts have found scanning costs to be equivalent to photocopying, including a Third Circuit case involving Fed. R. Civ. P. 54(d)(1)'s cost-shifting provisions. *See Race Tires*, 674 F.3d at 167; *see also* (ECF No. 486 at 20 (citing *Brown v. The McGraw-Hill Companies, Inc.*, 526 F. Supp. 2d 950, 959 (N.D. Iowa 2007)); *Chicago Tchrs. Union, Loc. 1, Am. Fed'n of Tchrs., AFL-CIO v. Bd. of Educ. of City of Chicago*, Civ. A. No. 12-10338, 2020 WL 13608315, at *3 (N.D. Ill. May 29, 2020). And while Plaintiffs point to a handful of cases where courts outside this Circuit have grouped document scanning costs in with other

discovery review processes, these decisions were not binding on Judge Dickson.[10] Judge Dickson's reliance on a Third Circuit decision that equated scanning to copying in the context of Rule 54(d)(1), another cost-shifting provision, to decide the issue as to Rule 34 was therefore neither contrary to law nor an abuse of discretion, and the reasoning of CMO 31 is affirmed.

Regarding Rule 26(c), Plaintiffs argue it was error for Judge Dickson not to consider the Rule 26(b) or *Zubulake* factors in that analysis, but there are several reasons why this decision is not contrary to law nor an abuse of discretion. First, because Judge Dickson's Rule 26(c) analysis was an alternative rationale, having already found cost-shifting justified under Rule 34, the holding would stand regardless, as this Court has now upheld CMO 31's Rule 34 analysis. Second, while Plaintiffs cite several cases in their reply which use the Rule 26(b) or *Zubulake* factors in the Rule 26(c) context (ECF No. 509 at 12–13), a review of decisions on Rule 26(c) demonstrates these factors are not the exclusive means employed for analyzing cost-shifting motions under that framework, *see, e.g.*, *DTE Elec. Co. v. Toshiba Am. Energy Sys. Corp.*, Civ. A. No. 22-10847, 2023 WL 9957254, at *1–2 (E.D. Mich. Dec. 13, 2023) ("To be successful [on a Rule 26(c) protective order], Plaintiffs will have to 'articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements.'" (citing *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001)); *Wakefield v. City of Pembroke Pines*, Civ. A. No. 05-61536, 2006 WL 8431629, at *2 (S.D. Fla. Mar. 16, 2006) (analyzing Rule 26(c) in context of Rule 34 and stating responding party has burden to show "good cause exists for shifting the cost

---

[10] Indeed, while Plaintiffs presented these cases in their original opposition to cost-shifting, they were used to support the proposition that "scanning costs . . . are different from the costs of making hardcopies at the insistence of a requesting party" (ECF No. 500-2, Ex. 12, at 30–31), a distinction Judge Dickson rejected (ECF No. 486 at 20 ("Plaintiffs argue that "scanning" costs are not recoverable as "copying" costs because unlike copying, scanning does not require the expenditure of ink, paper, and shipping of paper materials. I find this argument unpersuasive. In today's digital age, scanning is the functional equivalent of photocopying, and there are costs involved.").)

to the requesting party" (citations omitted)); *Portis v. City of Chicago*, Civ. A. No. 02-3139, 2004 WL 2812084, at *5 (N.D. Ill. Dec. 7, 2004) (allocating costs under Rule 26(c) based on trial court's "considerable discretion in determining whether expense-shifting in discovery production is appropriate" (quoting *Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996))); *In re Application of Lufthansa Technik AG for 28 U.S.C. § 1782 Discovery*, Civ. A. No. 8:19-00016, 2020 WL 5921945, at *6 (C.D. Cal. Sept. 16, 2020) (shifting costs under Rule 26(c) based on court's "discretion" alone); *see also Boeynaems v. LA Fitness Int'l, LLC*, 285 F.R.D. 331 (E.D. Pa. 2012) ("[A] court has discretion under Rule 26(c) to condition discovery on the requesting party's payment of the costs of the discovery. In making such a determination, *courts often consider* the factors set forth in Rule 26(b)(2)(C)(iii)[.]" (emphasis added)); *Norfolk S. Ry. Co. v. Pittsburgh & W. Virginia R.R.*, Civ. A. No. 2:11- 1588, 2013 WL 6628624, at *2 (W.D. Pa. Dec. 17, 2013) ("The exercise of this discretion [under Rule 26(c)] *is often guided* by the proportionality test under Rule 26(b)." (emphasis added)). Because the Rule 26(b) factors are merely one approach to analyzing whether the "undue burden or expense" discussed in Rule 26(c) exists, declining to consider them was not reversible error.

Accordingly, CMO 31 is affirmed. Because CMO 31 reserved the allocation of costs until Allergan gave a sufficiently detailed accounting of its expenses, the Court instructs the parties to comply with Judge Dickson's directive in CMO 31 by providing the information necessary to ascertain the proper distribution of costs, which will be reimbursed at the conclusion of this litigation.[11]

---

[11] In their reply, Plaintiffs also argue the supplemental declaration Allergan submitted pursuant to CMO 31 is deficient because it fails to separate scanning costs from other tasks. (ECF No. 509 at 14.) Plaintiffs assert this means "neither the Special Master nor this Court – let alone Plaintiffs – can determine what costs are attributable to Allergan's poor recordkeeping," and the Court should

### B.  CMO 32

Plaintiffs ask this Court to reverse several of Judge Dickson's rulings on discovery matters in CMO 32. (ECF No. 516-1.) Plaintiffs argue Judge Dickson erroneously determined Plaintiffs' requests for "documents and testimony related to Allergan's (and its predecessors') document retention, preservation, and destruction policies from 2005 to present" in Topics 1–3 were duplicative of similar topics in the September Notice and disproportionate to the needs of the case. (*Id.* at 5.) However, Plaintiffs contend Allergan produced two deponents to respond to the related topics in the September Notice who could speak only to five "potentially relevant sources of ESI" and not "document retention, preservation, and destruction policies for any other ESI sources or non-ESI sources." (*Id.* at 6.) Because Allergan indicated in its Motion for a Protective Order that most of records related to the C-Suite Custodians at issue would not be ESI, Plaintiffs argue the depositions stemming from the September Notice could not have covered those issues and, therefore, the Notice could not be duplicative. (*Id.*) Plaintiffs also contend denying them the ability to ask about document preservation as outlined in Topics 1–3, as well as the limitations CMO 32 applied to litigation holds (Topics 7–9) and other lawsuits (Topics 12–13), conflicts with Judge

---

reverse CMO 31's determination that cost-shifting is warranted, as Allergan has not laid a sufficient factual basis. (*Id.* at 14–15.) As an argument raised for the first time in Plaintiffs' reply on appeal, the Court need not consider it. *See Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 145–46 (3d Cir. 2017) ("[W]e have consistently refused to consider ill-developed arguments or those not properly raised and discussed in the appellate briefing. . . . Nor will we reach arguments raised for the first time in a reply brief or at oral argument."). Even if this issue had been raised in Plaintiffs' opening brief, however, it is not yet ripe. Judge Dickson has not evaluated whether Allergan's supplemental declaration complies with CMO 31. Consistent with the discretion afforded a special master to manage non-dispositive matters, this Court will give Judge Dickson the opportunity to make a ruling on how to allocate costs between the parties (if at all), including by requesting further information from Allergan, before it reviews whether such an allocation is proper.

Dickson's preservation of Plaintiffs' ability to investigate "the loss and/or destruction of custodial files" for the C-Suite Custodians, as all of these areas will be necessary to develop a full factual record for any future spoliation arguments. (*Id.* at 7.) Finally, Plaintiffs assert Allergan failed to meet to show Plaintiffs' requests for litigation holds or information about other lawsuits "would be unduly burdensome to produce or prepare a witness about." (*Id.* at 8 (citing *Fattone v. Burger*, Civ. A. No. 2:12-1691, 2015 WL 4608061, at *2–3 (W.D. Pa. July 31, 2015); *D'Agostino v. Johnson & Johnson*, 576 A.2d 893, 900 (N.J. App. Div. 1990)).) Instead, Plaintiffs argue Allergan provided nothing more than generalized allegations without evidence, "such as a certification from Allergan," as to the burden these requests presented, and Judge Dickson relied on "naked assertions" by counsel to find these Topics were burdensome and disproportionate. (*Id.* at 9.)

In response, Allergan argues CMO 32 appropriately curtailed Plaintiffs' "expansive" requests in the Notice and should be upheld. (ECF No. 533 at 1.) Allergan refutes Plaintiffs' assertion that Topics 1–3 are non-duplicative of the September Notice because Plaintiffs have already had "deposition testimony, over 18 million pages of produced documents (including policies and procedures related to 'the storage, preservation, deletion, and backup of documents and data'), and Allergan's ESI and database disclosures" for years, and any further testimony or document production would have *de minimis* returns. (*Id.* at 5.) Contrary to Plaintiffs' characterization, Allergan also argues its deponents were able to address the questions raised in Topics 1–3, providing citations to deposition testimony where Allergan contends the deponents were asked about document retention policies. (*Id.* at 5–6.) Further, Allergan asserts the "mountain of discovery" produced covering "document storage and retention" make the argument that additional testimony is needed specious. (*Id.*) Moreover, Allergan contends Plaintiffs' argument about the insufficiency of Allergan's witnesses cannot be raised on appeal when it was not raised

in response to the Motion for a Protective Order, as it was not on the record before Judge Dickson. (*Id.* at 6 (citing *MSP Recovery Claims Series, LLC v. Sanofi-Aventis U.S. LLC*, Civ. A. No. 2:18-cv-02211, 2024 U.S. Dist. LEXIS 160906, at *9 (D.N.J. Sep. 6, 2024); *Amersham Biosciences v. PerkinElmer, Inc.*, Civ. A. No. 03-4901, 2005 WL 8179738, at *3 (D.N.J. Apr. 14, 2005); *Lawson v. Praxair, Inc.*, Civ. A. No. 3:16-2435, 2021 U.S. Dist. LEXIS 61505, at *13 (D.N.J. Mar. 30, 2021)).) Regarding the Notice Topics where Judge Dickson limited the scope of discovery, Allergan rejects Plaintiffs' view these modifications "destroyed" the purpose of the requested deposition. (*Id.* at 7.) Allergan contends it produced the relevant document retention and preservation policies and notes CMO 32 explicitly allows inquiry into multiple categories of information about the legal holds in this litigation, as well as document preservation policies and procedures over the course of Allergan's transition from its corporate predecessors into its current structure. (*Id.* at 7–8.) Allergan asserts Plaintiffs rehash their prior arguments from their opposition to the Motion for a Protective Order without demonstrating a "change in controlling law or new evidence" and cannot raise them before the Court again. (*Id.* at 8–9 (citing *B.L. v. Fetherman*, Civ. A. No. 22-3471, 2023 U.S. Dist. LEXIS 68306, *10–11 (D.N.J. Apr. 18, 2023); *Diebler v. Sanmedica Int'l, LLC*, Civ. A. No. 1:19-cv-20155, 2022 U.S. Dist. LEXIS 197460, at *8 (D.N.J. Oct. 31, 2022); *Omojola v. ARC of Ocean Cnty.*, Civ. A. No. 19-20354, 2022 U.S. Dist. LEXIS 66729, at *4 (D.N.J. Mar. 16, 2022)).)

Plaintiffs respond that Allergan's "table-pounding" does not save CMO 32 from its clear errors. (ECF No. 536 at 1.) Plaintiffs point out Allergan does not dispute Topics 1–3 are not duplicative of the September Notice, nor did they argue Topics 1–3 were duplicative in the original Motion for a Protective Order; rather, they assert the Special Master made this finding *sua sponte*. (*Id.* at 2.) Because "Plaintiffs cannot be expected to preemptively respond to an argument that

Allergan did not make," Plaintiffs contend they are not barred from contesting the duplication holding. (*Id.*) While Allergan faults Plaintiffs for failing to seek the information requested for years, Plaintiffs argue "Allergan has taken years to produce the discovery in this case and should have disclosed the missing custodial files long ago," but only did so at the close of discovery. (*Id.* at 3.) Plaintiffs also argue Allergan's response fails to explain how Plaintiffs can assess whether records were improperly destroyed without knowledge of the litigation holds in other cases. (*Id.*)

The Court will again apply the standard of review set out in Local Civil Rule 72.1(c)(1), as incorporated in the Special Master Order (ECF No. 293 ¶ 2), and will reverse CMO 32 only if it is clearly erroneous or contrary to law,[12] *see, e.g.*, *Cooper Hosp.*, 183 F.R.D. at 127. The Court agrees with Allergan that CMO 32 was neither clearly erroneous nor contrary to settled law.

First, the Court agrees Plaintiffs' concern about the adequacy of Allergan's deponents is untimely, as it was not raised in opposition to the Motion for a Protective Order or at any point prior. *See Lawson*, 2021 WL 1207494, at *3 (finding legal argument not raised before special master was waived when raised on appeal in district court); *Arconic Inc. v. Novelis Inc.*, Civ. A.

---

[12] Plaintiffs argue not only that New Jersey rules on interlocutory appeals should govern the review here because the original Motion for a Protective Order was only filed in the MCL, but also that "[t]he court *must* decide de novo all objections to conclusions of law made or recommended by a master." (ECF No. 516-1 at 3–4 (quoting *In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*, 2022 WL 3211421, at *2–3 (D.N.J. Aug. 9, 2022)) (alterations in original).) Neither argument has merit for the same reason: the Special Master Order clearly states all appeals to this Court are reviewed under the standard set in Local Civil Rule 72.1(c)(1), to which the parties did not object. (ECF No. 293 ("[T]he Court notified the parties of its intention to appoint Joseph A. Dickson, U.S.M.J. (ret.) of the firm Chiesa Shahinian & Giantomasi PC as special master. No party has filed an objection to the appointment.").) Regardless of where the dispute originated, Plaintiffs appealed the matter to this Court, so it became an appeal governed by the Special Master Order. While Plaintiffs quote from a prior appeal of a Special Master Order in this litigation to support their contention *de novo* review applies, this quotation is taken out of context. In the subsequent paragraphs, the Court referenced the Special Master Order and determined the proper standard is "clearly erroneous or contrary to law." *In re Allergan*, 2022 WL 3211421 at *3 (citing L. Civ. R. 72.1(c)(1)(A)). The Court went on to find "[t]he Special Master's decision was neither clearly erroneous nor contrary to settled law." *Id.* at *4.

No. 17-1434, 2019 WL 5802365, at *5 (W.D. Pa. Sept. 6, 2019) (finding waiver of claims of discovery insufficiency where party failed to use meet-and-confers or letter briefs to special master to raise issue). Plaintiffs may not have realized the deponents' testimony was insufficient until Allergan disclosed it was missing files related to the C-Suite Custodians, but Plaintiffs could have provided this context to the Special Master in their opposition to the Motion for a Protective Order or through other means. Plaintiffs argue this was not possible because Allergan did not argue Topics 1–3 were duplicative and contend Judge Dickson made this determination *sua sponte*. (ECF No. 536 at 2.) But Plaintiffs do not refute they could have raised the sufficiency of the Allergan deponents sooner. Additionally, in the Motion for a Protective Order, Allergan argued "many of the Topics identified by Plaintiffs are duplicative of Topics contained in Plaintiffs' [September] Notice." (ECF No. 533-1, Ex. 2, at 8.) Allergan went on to provide Topics 4–6 as *examples* of the duplicative requests, without conceding all other Topics were non-duplicative. (*Id.*) On this record, it was not clearly erroneous for Judge Dickson to consider whether all Topics in the Notice were duplicative of the September Notice and to find Plaintiffs' objection based on the insufficiency of Allergan's deponents was untimely.

Regarding Plaintiffs' requests for Allergan's litigation holds, Judge Dickson reviewed case law espousing the general principle that "litigation hold letters are not discoverable," but certain related information, "such as whether a notice was issued and what steps employees took to comply with the notice," may be necessary for plaintiffs to obtain. (ECF No. 513 at 11–12 (citing *Major Tours, Inc. v. Colorel*, 2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009); *Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116, 1123 (N.D. Ga. 2007); *Muro v. Target Corp.*, 250 F.R.D. 350, 360 (N.D. Ill. 2007); *Turner v. Resort Condos. Int'l*, Civ. A. No. 03-2025, 2006 WL 1990379, at *7–8 (S.D. Ind. July 13, 2006); *In re eBay Seller Antitrust Litig.*, Civ. A. No. 07-01882, 2007 WL 2852364, at *2

(N.D. Cal. Oct. 2, 2007); *Boyington v. Percheron Field Servs., LLC*, Civ. A. No. 3:14-90, 2016 WL 6068813, at \*12 (W.D. Pa. Oct. 14, 2016).) In line with these principles, CMO 32 allows Plaintiffs to explore when each litigation hold relevant to this litigation was issued, the employees responsible for them, the actions employees were instructed to take, which ESI categories employees were instructed to preserve, any internal compliance processes, the location of preserved documents, any backups created, any information regarding potential destruction of covered documents, and the date each litigation hold concluded. (*Id.* at 12.) Plaintiffs have not surfaced any case law calling into question the privileged nature of the underlying litigation holds.

Plaintiffs contend Allergan did not meet its burden to show that producing litigation holds from other litigations would be unduly burdensome, though they make no such argument about the litigation hold in this litigation. Generally, "[w]hile the law is unsettled as to whether a party is entitled to compel production of litigation hold letters themselves," *LifeScan, Inc. v. Smith*, Civ. A. No. 17-5552, 2024 WL 3823488, at \*5 (D.N.J. July 11, 2024), those courts that permit production of litigation holds themselves typically require "a preliminary showing of spoliation of evidence," *Major Tours*, 2009 WL 2413631 at \*3 (ordering production of litigation hold letters after finding preliminary showing of spoliation based on statements in party's Rule 30(b)(6) testimony); *see also Tate & Lyle Americas, LLC v. Glatt Air Techniques, Inc.*, Civ. A. No. 13-2037, 2014 WL 10209161, at \*2–3 (C.D. Ill. Aug. 4, 2014) (ordering production of litigation hold letters after finding preliminary showing of spoliation based on failure to impose hold "until over three years after it anticipated litigation"); *accord Raynor v. D.C.*, Civ. A. No. 14-750, 2020 WL 13603997, at \*1–2 (D.D.C. May 6, 2020) (denying request to order production of litigation hold letter sought for spoliation motion where plaintiff did not make preliminary showing of spoliation and already knew "when the litigation hold letter would have issued, that the documents were not

produced, and that the documents, to the extent they exist, should have been preserved," so need for letter was unclear); *Nekich v. Wisconsin Cent. Ltd.*, Civ. A. No. 16-2399, 2017 WL 11454634, at *5 (D. Minn. Sept. 12, 2017) ("[B]ecause Nekich has not demonstrated spoliation, the requests to produce the litigation hold letters [are] denied."). However, Plaintiffs rejected the notion they needed to show spoliation to obtain the litigation holds based on *Hrymoc v. Ethicon, Inc.*, No. BER-L-013696-14, 2017 WL 11602085 at *5–8 (N.J. Super. Nov. 3, 2017). (ECF No. 513 at 4.) Noting the *Hrymoc* decision related to a motion *in limine,* where the plaintiff sought to support allegations of spoliation, Judge Dickson concluded this was not an appropriate standard for assessing Allergan's burden. (*Id.* at 6–7.) While Judge Dickson did note "that the loss or destruction of files could be a basis for a spoliation argument," he did not find a preliminary showing of spoliation of evidence by Allergan, as Plaintiffs did not ask for such a finding. (*Id.* at 7.) Moreover, even if Plaintiffs had made a preliminary showing of spoliation, they cite no authority that producing a litigation hold letter is a required outcome; indeed, the cases Plaintiffs cite stand for the proposition that litigation hold letters "*are* discoverable" in instances of potential spoliation, not that a party *must* produce them. *Major Tours*, 2009 WL 2413631 at *2 (emphasis added).

As for the inquiries into other litigations (Topics 12–13), CMO 32 was not clearly erroneous or an abuse of discretion in the context of Judge Dickson's "particularly broad discretion in resolving discovery disputes." *Halsey v. Pfeiffer*, Civ. A. No. 09-1138, 2010 WL 3735702, at *1 (D.N.J. Sept. 17, 2010); *see also Sanchez Lara*, 2024 WL 4785008, at *2. In its Motion for a Protective Order, Allergan argued the litigation holds from cases that resolved at least 16 years prior to the MDL were not relevant, likely privileged, and disproportionate. (ECF No. 533-1, Ex. 3, at 6.) Judge Dickson's decision not to permit extensive additional discovery on no-longer-active litigation holds from unrelated lawsuits decades prior, that may or may not have impacted the

preservation of certain custodians' documents in the MDL, was in line with the limits imposed on discovery by the Federal Rules and the discretion afforded to magistrates and special masters in discovery disputes for their economical resolution. *See, e.g.*, *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 196 (E.D. Pa. 2004) (rejecting request for discovery into majority of litigations involving defendants as "remote from Plaintiff's case and [not] likely to produce evidence relevant to Plaintiff's case"). That Allergan provided substantial discovery on its information and document retention and preservation practices further underscores that Judge Dickson's grant of the protective order on Topics 12–13 is neither clearly erroneous nor an abuse of discretion.

## IV. CONCLUSION

For the reasons set forth above, and for good cause appearing, Plaintiffs' appeals of CMO 31 (ECF No. 496) and CMO 32 (ECF No. 516) are **DENIED** and Judge Dickson's June 10, 2024 Order (ECF No. 486) and September 4, 2024 Order (ECF No. 513) are **AFFIRMED**.

Date: March 21, 2025

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**