# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ***IN RE:*** **ALLERGAN BIOCELL TEXTURED BREAST IMPLANT PRODUCT LIABILITY LITIGATION**<br><br>**THIS DOCUMENT RELATES TO: ALL CASES** | **Case No. 2:19-md-02921(BRM)(LDW)**<br><br>**MDL No. 2921**<br><br>**JUDGE BRIAN A. MARTINOTTI**<br><br>**MAGISTRATE JUDGE LEDA DUNN WETTRE** |

# Expert Report of Dr. Elizabeth J. Hall-Findlay, MD, FRCSC

I have been retained in the above-captioned litigation to offer my professional expert opinion regarding six patients who are bellwether Plaintiffs. The six patients were implanted with BIOCELL textured breast implants and elected, after the recall of BIOCELL products in 2019 and upon consultation with their surgeons, to have their BIOCELL implants surgically removed. None of the six patients had a diagnosis of Breast Implant-Associated Anaplastic Large Cell Lymphoma (BIA-ALCL) at the time of explant of their BIOCELL devices.

I have been requested to apply my professional expertise to evaluate and set forth my opinions regarding the reasonableness of the removal of the BIOCELL implants with respect to these six patients based upon the circumstances. I address below in this report: (1) my background, education, training, and expertise; (2) my approach and methodology; (3) the materials I reviewed; and (4) my analysis of each of the six patients' relevant history, medical records, and testimony. My opinions stated herein are held to a reasonable degree of medical probability.

## I. Relevant Background – Education, Training, and Experience

A copy of my CV is attached hereto as Exhibit A. I have not testified as an expert in any deposition or trial within the last four years.

Education and Postgraduate Training

I am a plastic surgeon and earned a BSc from McGill University (1971) and an MD from the University of Western Ontario (1976). I completed early postgraduate surgical training in Canada, followed by a period as a visiting resident in the Division of Plastic Surgery at the University of California, San Francisco (UCSF) (1979). I then undertook a clinical microsurgery and hand surgery fellowship at UCSF's Ralph K. Davies Medical Center (1980) and completed formal plastic surgery residency training at Montefiore Hospital/Albert Einstein College of Medicine, including service as Chief Resident in Plastic Surgery (1981–1982).

## II. Approach and Methodology

My analysis set forth in this report is informed by my direct practical and professional experience with breast implants and implant-related conditions, including counseling patients, evaluating reported symptoms and clinical findings, reviewing diagnostic testing and pathology where applicable, and performing implant removal procedures and related capsular surgery. I have also participated in presentations, discussions, and publications concerning breast implants and the risks and benefits of implantation and removal..

I have reviewed a considerable amount of scientific and medical literature, medical records, sworn testimony, and other materials to reach the opinions I have formed in this matter. I have also reviewed information from Allergan, regulatory agencies, and peer reviewed literature, regarding the signs and symptoms, associated conditions, risk, and incidence of BIA-ALCL. Some of the information I have reviewed is cited in this report, and other information is known to me through my education and career, attendance at professional meetings, and familiarity with journals and other peer reviewed medical and scientific publications regularly reviewed and relied upon by breast surgeons.

I have comprehensive and far-reaching experience with breast implants, including placing implants, monitoring them, and removing and replacing them. I have treated thousands of patients during the course of my career. I have placed Allergan's BIOCELL textured breast implants in patients, evaluated patients with signs and symptoms of BIA-ALCL, participated in informed consent discussions with patients, and rendered a diagnosis of BIA-ALCL for patients with positive pathology findings.

I have also removed breast implants, with and without breast implant exchange, and performed en bloc or complete capsulectomies. I have reviewed respected literature published in my field, including literature published by my professional colleagues in breast surgery, and have utilized regularly and generally accepted methodologies in formulating my opinions. I have personal clinical experience in the placement of BIOCELL implants for approximately 100 patients, and I have diagnosed two cases of BIA-ALCL among that patient base.

In addition to reviewing scientific and medical literature, I have reviewed medical records, sworn testimony, and other materials to reach the opinions I have formed in this matter. In forming my opinions, I used a methodology that combines (1) review of case-specific materials, (2) application of generally accepted clinical principles used by breast surgeons in evaluating implant-related issues, (3) synthesis of peer-reviewed medical literature, other respected information, and authoritative guidance, and (4) shared decision-making principles that consider patient values and preferences.

I was not asked to render specific opinions on the general cause of BIA-ALCL, and I understand that others are submitting expert reports in this litigation regarding this topic in detail, but I believe, based upon the available scientific and medical literature, and the data and details underlying the recall of BIOCELL products, that there is a reasonable basis to believe that textured breast implants present a materially increased risk of BIA-ALCL, and that Allergan has the most significant risk among the textured breast implants sold in the United States.

In reaching my opinions stated in this report, I approached each patient's case with an overriding question: Whether, for each of the six patients discussed below, the removal of their BIOCELL textured implants was reasonable and appropriate in light of the available information regarding the BIOCELL implants. To answer that question, I took into account the BIA-ALCL risk data, the respective patient's concerns about her breast health status, the presence of symptoms suggestive of or associated with BIA-ALCL, and the patients' desire to reduce their risk for development of BIA-ALCL, among other factors discussed below.

I reviewed case materials specific to each case, including relevant deposition transcripts, medical records and other materials, including documentation of symptoms/findings, evaluations performed, counseling/consent discussions, and procedures. I evaluated the clinical presentation for each patient, using standard breast-surgery decision-making, including differential diagnosis/differential etiology as appropriate, and assessed whether the evaluation and management options considered were reasonable in light of the information available at the time. I considered and weighed the peer-reviewed literature and guidance from recognized authorities, considering evidence quality, consistency across sources, and known limitations. I assessed foreseeable benefits, risks, and burdens of the surgical option(s) versus reasonable alternatives (including non-surgical management where applicable), and I evaluated how the extent of any surgical approach affects expected benefits and risks. I assessed from the available information whether material risks, benefits, uncertainties, and alternatives were reasonably communicated at the time of breast implant and explant and whether the plan aligned with patient preferences and values as reflected in the documentation. I formulated my opinions based on the facts in the record and have explained the basis for each opinion. I identified limitations and uncertainties based upon what was known or understood to be risks and benefits of BIOCELL as it relates to BIA-ALCL.

In the field of plastic surgery generally and breast surgery specifically, surgeons routinely make recommendations using the best available evidence, which may include observational studies, registries, post-market safety data, consensus statements, and clinical experience. The presence of general guidance statements does not eliminate clinical judgment; rather, it informs that judgment and must be applied to the patient's specific posture, findings, and values.

## III. Materials Reviewed

The materials I reviewed include medical records and related clinical documentation, under-oath testimony, and other case materials relevant to the clinical timeline and decision-making with respect to the six patients at issue. I also reviewed peer-reviewed medical and scientific literature, information generated or produced by Allergan, the BIOCELL manufacturer, and information from regulatory agencies and other recognized authorities regarding breast implants, implant removal, and implant-associated risks and conditions. Some of the information reviewed is cited in this report and other information is known to me through my education, training, attendance at professional meetings, and familiarity with journals and other peer-reviewed medical and scientific publications regularly reviewed and relied upon by breast surgeons.

Dowland's surgeon, Dr. Harless, confirmed that "in light of Ms. Dowland's concern about the BIA-ALCL and the circumstances of her treatment and (inaudible) history" that her removal of her BIOCELL implants was "reasonable and appropriate." Dr. Harless testified that she thought "surgery was very reasonable in this case which is why it was performed." She thought it was reasonable "because her implants have been recalled and she wanted them removed." She agreed that removal was Ms. Dowland's decision. "I thought the surgery was reasonable for her to have, that's why I performed the operation." Harless Tr. 50:2-10; 96:15-18 – 97:1-4.

**Opinions**

It is my opinion, within a reasonable degree of medical probability:

1. Ms. Dowland did not know about the risk of BIA-ALCL at the time of her implantation, and neither she nor her surgeon knew of the unique risk of BIA-ALCL posed by Allergan's BIOCELL textured implants.[li] Because she had no information about BIA-ALCL in general, she could not have had information about her risk of BIA-ALCL being increased due to her underlying BRCA mutation.[lii] She could not make an informed choice about her implants without this critical safety information.[liii]

2. It was reasonable for Ms. Dowland to undergo removal of her BIOCELL textured breast implants because she was at elevated risk for development of BIA-ALCL, for general risk reduction, and because she was symptomatic, with pain and asymmetry.

3. Ms. Dowland would not have had her textured implants removed but for Allergan's recall and her desire to reduce her risk of BIA-ALCL.

4. There is no clear explanation for Ms. Dowland's persistent left-sided pain, but it was medically reasonable and appropriate to remove her BIOCELL implants to rule out BIA-ALCL and to reduce her risk. If the persistent pain was something Ms. Dowland desired to treat without any consideration of BIA-ALCL risk, her other implant (right-side implant) did not have to be explanted and en bloc capsulectomy would not have been required. She had experienced the pain for an extended period of time without seeking care or removal, which suggests she would not have sought removal of one or both of her implants except for the concern about BIA-ALCL and her desire to reduce her risk.

5. Although she may remain at risk for BIA-ALCL due to having a history of BIOCELL and BRCA mutation, Ms. Dowland has reduced her risk, more likely than not, by her actions to have her textured implants removed.

### 2. <u>SHELBEIGH ANN DRAKE</u>

The case specific information I reviewed in Ms. Drake's case includes:

1. Dr. Todd Adam-Coastal Plastic Surgery Medical Records.

Ms. Drake testified that she understood that Dr. Adam removed the lump/cyst and sent it to the lab to rule out cancer; she did not receive a direct report showing the results, but recalled being told by office staff that "everything looked good." Drake Tr. 191:1-12. No formal records or reports could be found to reflect any testing for BIA-ALCL.

**Opinions**

I have formed opinions, within a reasonable degree of medical probability regarding Ms. Drake's removal of her BIOCELL products, which include:

1. It was reasonable for Ms. Drake to remove her BIOCELL textured breast implants. She had learned about the recall of the BIOCELL products and was concerned about her risk of developing BIA-ALCL and she had symptoms of tenderness/pain, burning, and a lump in the breast.

2. Ms. Drake lacked sufficient information about the unique risk of BIA-ALCL from BIOCELL products to assist her in selecting an alternative, safer implant when she was initially implanted with her BIOCELL products. Her surgeon supported the removal of the implants (Adam Tr. 27:15-18) and acknowledged that he did not advise her of the risk of BIA-ALCL associated with the implants when he placed them as he did not know about the risks associated with BIOCELL. Adam Tr. 20:1-10. Had he known, he would have recommended smooth implants.

3. It was reasonable for Ms. Drake to defer removal of her BIOCELL implants until after she delivered her child and could financially afford the procedure. Ms. Drake intended to remove her textured BIOCELL implants upon learning of the recall. Dr. Adam noted that Ms. Drake was interested in removal when she saw him within 60 days of the recall. Pregnancy and financial constraints are appropriate and reasonable causes for delay in the removal of the implants. Surgeries for pregnant women can add additional risks to the procedure for the patient and an unborn child, including risks from anesthesia, medications, stress, and potential for preterm labor which can harm the developing baby. Allergan has also advised breast implant surgery for pregnant women.

4. It was reasonable to have smooth implants placed upon the removal and exchange of her BIOCELL products, as the professional organizations and leaders in the breast surgery field and Ms. Drake's surgeon have stated that there is no confirmed case of BIA-ALCL in a patient with a history of smooth implants only. Adam Tr. 111:12-17.

5. While removal of her BIOCELL products may not fully remove Ms. Drake's risk of developing BIA-ALCL, removal more likely than not reduced the risk of BIA-ALCL.

Dr. Moser further testified that removal of BIOCELL implants reduces the risk of BIA-ALCL but that it is too early to have a definitive scientific conclusion about risk reduction. Moser Tr. 63:11-13, 67:14-16, 254:6-11. However, he does not believe it reduces the risk to zero. Moser Tr. 254:13-15. He recommends removal of BIOCELL implants to his patients who have them to reduce the risk of BIA-ALCL.[lviii] He discusses risks and benefits regarding BIOELL, and after that shared decision-making process, patients mostly opt for removal of their implants. Moser Tr. 25:15-20. He also testified that removal of Ms. Henson's BIOCELL implants was medically reasonable in light of Ms. Henson's concern about developing or being at risk for BIA-ALCL. Moser Tr. 228:9-229:1.

**Opinions**

It is my opinion, within a reasonable degree of medical probability, as follows:

1. It was reasonable for Ms. Henson to undergo removal of her recalled BIOCELL textured implants after learning of the 2019 recall and the associated increased risk of BIA-ALCL.

2. Ms. Henson was unable to make an informed decision regarding BIA-ALCL risk when she was implanted with BIOCELL devices; and she would more likely than not declined to have BIOCELL used if she had known of the risk of BIA-ALCL unique to BIOCELL, as she contacted her surgeon when she learned of the recall and had her implants removed to reduce her risk.

3. It was reasonable for Ms. Henson to have smooth implants placed after the BIOCELL products were removed, as there are no confirmed reports of BIA-ALCL in a patient with a history of smooth implants only.

4. Removal of Ms. Henson's BIOCELL implants may not remove completely, her risk of developing BIA-ALCL, but it more likely than not reduced the risk of BIA-ALCL.

### 4. <u>DAISY MORALES-HERNANDEZ</u>

The case-specific information I reviewed regarding Daisy Morales-Hernandez's case includes:

1. Medical Records from Slocum Dickson Breast Care Center.

2. Medical Records from Slocum Dickson Medical Group.

3. Medical Records from Faxton St. Lukes Healthcare.

4. Medical Records from Genesee Orthopedics Plastic Surgery Associates.

5. Deposition of Plaintiff Daisy Morales-Hernandez and exhibits.

forego further breast surgery at this time and to accept her substantial deformity suggests that she is risk averse and dedicated to taking all reasonable steps necessary to protect herself from developing another cancer. Her concerns are reasonable in light of her history and post-explant complications.

**Opinions**

I have formed opinions, within a reasonable degree of medical probability, regarding Ms. Morales-Hernandez's removal of her BIOCELL products, including the following:

1. It was reasonable for Ms. Morales-Hernandez to have her BIOCELL products removed, because she had symptoms of BIA-ALCL. She had breast tenderness and some degree of capsular contracture bilaterally and some asymmetry, which are known to be symptoms of, or associated with, BIA-ALCL.

2. It was also reasonable for Ms. Morales-Hernandez to remove her BIOCELL textured breast implants upon learning of the recall and having concerns about the risk of developing BIA-ALCL. She had no awareness of the risk of BIA-ALCL when she was initially implanted with her BIOCELL products.

3. Ms. Morales-Hernandez's surgeon acknowledged that he did not advise her of the risk of BIA-ALCL when he implanted her BIOCELL products and he reasonably supported the removal of her implants given her breast health history and Ms. Morales-Hernandez's desire to reduce her risk of developing BIA-ALCL.

4. It was reasonable for Ms. Morales-Hernandez to undergo placement of smooth implants upon the removal of her BIOCELL implants, because there have been no confirmed cases of BIA-ALCL in patients with a history of only smooth implants that I am aware of, and to help Ms. Morales-Hernandez achieve as normal a physical appearance as is possible.

5. Removal of her BIOCELL products may not completely eliminate Ms. Morales-Hernandez's risk of developing BIA-ALCL, but it more likely than not reduced the risk of her developing BIA-ALCL.

6. Removal of her BIOCELL products and reconstruction with smooth breast implants resulted in a series of complications, associated with wound dehiscence and likely the effects of radiation to the right breast from breast cancer treatment from years before, resulting in the loss of Ms. Morales-Hernandez's right implant and the use of a prosthetic device.

7. Ms. Morales-Hernandez is significantly scarred and disfigured since removal of her BIOCELL textured breast implants.[lxi]

Dr. Wolfort also documented that specimens were submitted to evaluate for BIA-ALCL, including cultures (including specific attention to organisms discussed in the literature) and pathology with lymphoma-directed workup (including CD markers). Pathology evaluation was performed by providers at ClinPath Diagnostics. Their findings included: the right and left capsule showed benign fibrosis/fibro-skeletal tissue consistent with breast implant capsule with no malignancy identified**.** This reflects chronic inflammation and inflammatory changes.[lxiv] Flow cytometry for both sides reflected no lymphoid clonality or other abnormalities. The gross description documented intact Allergan Style 120 implants (lot 1636406, 400 cc) and noted a capsular surface area with white-tan plaques on the right.

After the surgical procedure, Ms. Rabin was hospitalized by Dr. Wolfort for pain control related to her recent surgery, on October 11, 2019. RABINT-13CRMC-01371. She subsequently had an evaluation in December 2019 for ongoing peripheral nerve pain. It was described as a persistent focal chest wall/pectoral border pain and assessment for intercostal neuropathy / neuroma-type pain, with diagnostic/therapeutic injection and discussion of further interventions if symptoms persisted. The follow-up visits included complaints of numbness and pain involving the chest wall and left arm. Interventions and diagnostics were utilized in an attempt to diagnose and treat the problems. Pain injections and occupational therapy were ordered, along with imaging studies and nerve studies. Her doctor diagnosed a neuroma and advised that surgery would be appropriate as a pain-relieving measure.

**Opinions**

It is my opinion, within a reasonable degree of medical probability, as follows:

1. It was reasonable for Ms. Rabin to undergo removal of her BIOCELL textured breast implants because she was at elevated risk for BIA-ALCL by virtue of having recalled BIOCELL devices, and because she was symptomatic (pain, pruritus, episodic swelling, hardening/capsular contracture, and displacement/asymmetry).

2. Removal of her BIOCELL implants may not remove completely Ms. Rabin's risk of developing BIA-ALCL, but it more likely than not reduced the risk of BIA-ALCL.

3. Neither Ms. Rabin's surgeon nor Ms. Rabin were aware of the risk of BIA-ALCL relative to her BIOCELL implants at the time they were implanted. Consequently, neither of them could make a well informed choice about the selection of the type of implant to use.

4. Ms. Rabin's decision-making was medically rational and consistent with her documented circumstances: she had longstanding symptoms and then received the 2019 recall notice which caused her significant concern for BIA-ALCL and prompting explant with a proper BIA-ALCL evaluation of the capsule tissue.

174:2-176:17. Upon consultation with Ms. Villarreal, Dr. Cash agreed that the prophylactic removal was a reasonable course of treatment given Ms. Villarreal's concerns. Villarreal Tr. 187:23-188:20, 189:15-24 Villarreal Tr. Ex. 15, 16, Ex. 17, Cash Tr. 174:2-176:17, 196:21-197:17. When smooth implants were chosen, Ms. Villarreal relied upon the expertise and professionalism of Dr. Cash in choosing them and weighing whatever risks might exist in making the recommendation. Villarreal Tr. 186:8-14. She recalls Dr. Cash relaying that there was no risk of BIA-ALCL with smooth implants. Villarreal Tr. 187:2-8.

On September 29, 2020, Ms. Villarreal underwent removal/exchange of her Allergan Natrelle 410 textured implants. Dr. Cash performed a bilateral capsulectomy to remove the BIOCELL products and placed Allergan Inspira Smooth, Round, Soft Touch full projecting 415ml silicone gel implants. The operative indication included "The patient has over time developed some glandular ptosis and then the FDA recalled Allergan texture surface implants from the market because of the association with BIA-ALCL and the patient was concerned for potential link of her implants to the atypical large cell lymphoma, opted to have a prophylactic capsulectomy with implant exchange and mastopexy." Villarreal Tr. Ex. 19 – VILLARREALLVK-6CCA-00113-116. During the procedure, it was discovered that there was an "implant rupture of the left breast." Villarreal Tr. Ex. 19. The left breast capsule showed signs of chronic inflammatory change, with dense fibrous tissue and focal foreign body type giant cell reaction.[lxvii]

During Ms. Villarreal's postoperative follow-up after the removal and exchange she expressed her disappointment with the outcome of the procedure and the appearance of her breasts. Villarreal Tr. 202:6-204:6, Cash Tr. 269:14-272:1. The asymmetry in Ms. Villarreal's breasts following the exchange was "very distressing" for Ms. Villarreal. Cash Tr. 271:23-272:22.

Ms. Villarreal signed pre-op consent forms on April 24, 2017, and the summary notes and other forms did not indicate an ALCL risk. Cash Tr. 108:12-17, Cash Tr. Ex. 7.

Dr. Cash testified that BIA-ALCL concerns did not become a risk that she discussed with patients until approximately late 2018. She voluntarily stopped using textured implants at about that time, in approximately January of 2019, due to the associated risks with BIA-ALCL. Cash Tr. 143:6-145:14. Dr. Cash stated that the prophylactic removal of Ms. Villarreal's textured implants was a reasonable medical procedure and course of treatment, given Ms. Villarreal's concerns. Cash Tr. 82:19-85:18, 171:12-173:24, 174:2-176:17, 196:21-197:17.

**Opinions**

I have formed opinions, within a reasonable degree of medical probability, regarding Ms. Villarreal's removal of her Allergan Natrelle 410 products, as follows:

1. It was reasonable for Ms. Villarreal to remove her Allergan Natrelle 410 textured breast implants. She had no knowledge about BIA-ALCL at the time her BIOCELL products were implanted. Villarreal Tr. 136:18-19. Once she learned about the recall of her implants and the basis for the recall, she became concerned about her risk of developing BIA-ALCL.

2. Without critical safety information about the risk of BIA-ALCL and BIOCELL textured implants, Ms. Villarreal lacked sufficient information or knowledge to assist her in making an informed choice about the type of implant to select. Likewise, her surgeon acknowledged that she did not advise Ms. Villarreal of the risk of BIA-ALCL associated with her textured implants when Ms. Villarreal received her implants, because that information was not known to her or the general medical community. Subsequently, her surgeon reasonably supported the removal of the implants, because of the risk of BIA-ALCL associated with textured implants.

3. It was reasonable to have smooth implants placed upon the removal and exchange of Ms. Villarreal's Allergan Natrelle 410 products, as the professional organizations and leaders in the breast surgery field have stated that there is no confirmed case of BIA-ALCL in a patient with a history of smooth implants only.

4. When Ms. Villarrea opted to proceed with replacement implants, her decision to reject any that could cause a risk of cancer (alternative textured products), strongly supports that she would not have selected BIOCELL products if she had known at the time her initial implants were placed that there was a risk of BIA-ALCL cancer.

5. Removal of her Natrelle 410 products may not remove completely Ms. Villarreal's risk of developing BIA-ALCL, but it more likely than not reduced the risk of BIA-ALCL.

---

[i] https://www.fda.gov/medical-devices/breast-implants/questions-and-answers-about-breast-implant-associated-anaplastic-large-cell-lymphoma-bia-alcl.

[ii] Keech JA, Jr. & Creech BJ, "Anaplastic T-Cell Lymphoma in Proximity to a Saline-Filled Breast Implant." 100 **Plast. Reconstr. Surg**. 554 (1997).

[iii] de Jong D, Vasmel WL, de Boer JP, et al. "Anaplastic large-cell lymphoma in women with breast implants." **JAMA**. 2008;300:2030–2035.

[iv] https://www.fda.gov/medical-devices/breast-implants/medical-device-reports-breast-implant-associated-anaplastic-large-cell-lymphoma.

[v] De Jong WH et al., "Final Opinion on the Safety of Breast Implants in Relation to Anaplastic Large Cell Lymphoma: Report of the Scientific Committee on Health, Emerging and Environmental Risks (SCHEER)." 125 **Regul. Toxicol. Pharmacol.** 104982 (2021), doi:10.1016/j.yrtph.2021.104982.

[vi] Clemens MW, Myckatyn TM, Di Napoli A, Feldman AL, Jaffe ES, Haymaker CL, Horwitz SM, Hunt KK, Kadin ME, McCarthy CM, Miranda RN, Prince HM, Santanelli di Pompeo F,

[xlix] Ms. Dowland underwent implant removal of her BIOCELL implants via full en bloc capsulectomy, the removal of her implant and capsule in one piece, because of her risk of BIA-ALCL. Dr. Harless testified that she doesn't always perform a capsulectomy, and it depends on whether the implant is "thick, if it's causing distortion of the breast; if it's calcified." Harless Tr. 30:9. She confirmed that otherwise it may not be necessary to perform a capsulectomy. Dr. Harless testified that a "[c]apsulectomy takes more time, probably an additional 30 minutes per breast perhaps. And complications include higher bleeding risk, (inaudible), need for draining, infection" and confirmed that it is associated with a longer recovery. She confirmed that an en bloc capsulectomy is a more aggressive procedure than a regular implant exchange with capsules left intact. Harless Tr. 48:2-7.

[l] Ms. Dowland's implants were removed after being in place for less than five years. No rupture, leak, capsular contracture, nor calcified capsule, were noted on either of Ms. Dowland's implants upon explant. DOWLANDAJ-26MCR-00082. No infection, biofilm, bacterial nor fungal growth were noted at pathological evaluation of Ms. Dowland's implants and capsules either. DOWLANDAJ-26MCR-00230. However, chronic inflammation was seen in both implants.[1] DOWLANDAJ-26MCR-00167. Chronic inflammation has been discussed as a potential contributing factor to the development of BIA-ALCL. *See* 2024 EURAPS Expert Consensus on breast implant associated-anaplastic large cell lymphoma**,** Sorotos, Michail et al., **J Plast Reconst & Aesth Surg**, Volume 110, 269 – 290; Lee, J.-H. (2021). "*Breast implant-associated anaplastic large-cell lymphoma (BIA-ALCL).*" **Yeungnam University J of Med, 38**(3), 175–182. https://doi.org/10.12701/yujm.2020.00801.

[li] Ms. Dowland was not informed of any BIA-ALCL cancer risk associated with BIOCELL implants prior to getting her implants. Dowland Tr. 141:2. Ms. Dowland's implanting surgeon, Dr. Steven Jacobson, testified that he did not begin informing patients of the risk of BIA-ALCL until the fall of 2016 – nearly two years after Ms. Dowland's implants were placed. Jacobson Tr. 191:19. Per his testimony, he was not aware of the risk of BIA-ALCL or the unique risk associated with BIOCELL when he implanted Ms. Dowland's BIOCELL products in 2015. He testified that, had he been aware of the risk in January 2015, he would have shared that information with Ms. Dowland as part of the informed consent process. Once Dr. Jacobson became aware of the risk, he completely stopped using BIOCELL implants. Jacobson Tr. 124:23.

[lii] Genetic testing conducted in February 2013 confirmed that Ms. Dowland is a carrier for deleterious BRCA 1 mutations. As a carrier of BRCA 1 (in conjunction with being a former user of Allergan's BIOCELL implants), Ms. Dowland was and remains at an increased risk for developing BIA-ALCL. Netherlands Cancer Institute found that in a cohort of 520 women with breast cancer, women with BRCA are 16 times more likely to develop BIA-ALCL. Ghione, P., Mandelker, D., Arcila, M., Seshan, V., Terry, M. B., Vijai, J., … Horwitz, S. (2025). *BRCA1/2 impact on the development of implant-associated lymphoma in women with breast cancer and textured implants*. **Blood Adv**. https://doi.org/10.1182/bloodadvances.2025016810.

[liii] Ms. Dowland was not informed of any BIA-ALCL cancer risk associated with BIOCELL implants prior to getting her implants. Dowland Tr. 141:2. Ms. Dowland's implanting surgeon, Dr. Steven Jacobson, testified that he did not begin informing patients of the risk of BIA-ALCL until the fall of 2016 – nearly two years after Ms. Dowland's implants were placed. Jacobson Tr.

191:19. Per his testimony, he was not aware of the risk of BIA-ALCL or the unique risk associated with BIOCELL when he implanted Ms. Dowland's BIOCELL products in 2015. He testified that, had he been aware of the risk in January 2015, he would have shared that information with Ms. Dowland as part of the informed consent process. Once Dr. Jacobson became aware of the risk, he completely stopped using BIOCELL implants. Jacobson Tr. 124:23.

[liv] The DFU discussed at Dr. Adam's deposition reflects:

*Anaplastic Large Cell Lymphoma*
• Based on information reported to FDA and found in medical literature, a possible association has been identified between breast implants and the rare development of anaplastic large cell lymphoma (ALCL), a type of non-Hodgkin's lymphoma. Women with breast implants may have a very small but increased risk of developing ALCL in the fluid or scar capsule adjacent to the implant.
• ALCL has been reported globally in patients with an implant history that includes Allergen's and other manufacturers' breast implants.
Adam Tr., Ex. 10.

This DFU does not inform users about the unique risk associated with BIOCELL when contrasted with other manufacturers of textured products. It does not disclose that BIA-ALCL can spread and cause death. It does not reveal that there have been no confirmed cases of BIA-ALCL in patients with a history of smooth only devices. Rather, it combines the risk across the board by its broad generalization, making it appear that smooth and textured implants and all manufacturers are equal with respect to BIA-ALCL.

The DFU also does not disclose the McGuire Natrelle 410 study results and the risk report of 1:4,414. Further, it does not appear that Drs. Moser or Kane were informed that Allergan's Key Opinion Leader/Consultant, Dr. Mark Clemens, advised Allergan's Medical Affairs Department as early as July 2014 that BIA-ALCL was primarily a BIOCELL problem:

> "Hi Ann. I had a call with
> 3 Mark Clemens yesterday, and in his opinion the data around
> 4 ALCL is looking worse and worse for Biocell. Though he
> 5 doesn't think ALCL is a Biocell only problem, it is
> 6 primarily a Biocell problem, and he expects that Allergan
> 7 will need to turn to another texture in the near future. He
> 8 is one of the more objective ALCL experts so the others are
> 9 likely even more negative about Biocell."

Exhibit 40, Carty Tr. 296:14-25-297:1-9, 6/4/2025. Dr. Clemens was an Allergan consultant at that time. Carty Tr. 297:20-22, 6/4/2025.

[lv] Dr. Adam testified that his understanding of the FDA's recommendation was removal of the recalled textured breast implants. Adam Tr. 110:2-3. Dr. Adam further testified that the data was pretty clear that there was an association [of BIA-ALCL] so he would want all of his patients to have the [textured] implants removed. Adam Tr. 110:19-21. Dr. Adam recommended all textured

Allergan implants have their implants replaced as soon as possible. Adam Tr. 113:1-2. Dr. Adam testified that per his understanding, there have been no confirmed cases of BIA-ALCL in patients that have a history of only having smooth implants. Adam Tr. 111:12-17.

[lvi] Both Dr. Kane and Dr. Moser were questioned about Directions for Use documents. Dr. Kane was asked about a DFU with a release date of July 2015, and Ms. Henson had her implants placed on September 1, 2015. Kane Tr., Ex. 34. The 2015 DFU states:
"Based on information reported to FDA and found in medical literature, a possible association has been identified between breast implants and the rare development of anaplastic large cell lymphoma (ALCL), a type of non- Hodgkin's lymphoma. Women with breast implants may have a very small but increased risk of developing ALCL in the fluid or scar capsule adjacent to the implant.

ALCL has been reported globally in patients with an implant history that includes Allergan's and other manufacturers' breast implants.

You should consider the possibility of ALCL when you have a patient with late onset, persistent pen-implant seroma. In some cases, patients presented with capsular contracture or masses adjacent to the breast implant. When testing for ALCL, collect fresh seroma fluid and representative portions of the capsule, and send for pathology tests to rule out ALCL."

This 2015 version does not describe the unique BIA-ALCL risk associated with BIOCELL and does not contrast between the risk of BIA-ALCL in other textured breast implants. Nor does the DFU identify that there is no confirmed risk of BIA-ALCL with smooth only implants. It does not describe the ability of the condition to outside the capsule, to metastasize or to cause death.

Dr. Moser was also shown a DFU exhibit, this time for the 9/2017 time frame. Ms. Henson's implants were placed September 1, 2015. The 2017 DFU provided some statements about BIA-ALCL:

• "Based on information reported to global regulatory agencies and found in medical literature an association has been identified between breast implants and the development of anaplastic large cell lymphoma. ALCL is a type of Non Hodgkins Lymphoma. Women with breast implants may have a very small but increased risk of developing Breast Implant Associated ALCL (BIA-ALCL) in the fluid or scar capsule adjacent to the implant, with documented potential for local, regional, and distant spread of the cancer with mortality reported in rare cases.

• BIA-ALCL has been reported globally in patients with an implant history that includes Allergan's and other manufacturers' breast implants with various surface properties, styles, and shapes. Most of the cases in the literature reports describe a history of the use of textured implants." Moser Tr., Ex 33- AGNBIOMDL-00033731, P. 20/58.

This DFU does not disclose the unique risk of BIA-ALCL associated with BIOCELL, it does not include information from Dr. McGuire's Natrelle 410 study which resulted in a risk calculation of 1:4,144, or distinguish between the incidence of BIA-ALCL among textured breast implant types or smooth implants.

---

Also, it does not appear that Drs. Moser or Kane were informed that Allergan's Key Opinion Leader/Consultant, Dr. Mark Clemens, advised Allergan's Medical Affairs Department as early as July 2014 that BIA-ALCL was primarily a BIOCELL problem:

> "Hi Ann. I had a call with
> 3 Mark Clemens yesterday, and in his opinion the data around
> 4 ALCL is looking worse and worse for Biocell. Though he
> 5 doesn't think ALCL is a Biocell only problem, it is
> 6 primarily a Biocell problem, and he expects that Allergan
> 7 will need to turn to another texture in the near future. He
> 8 is one of the more objective ALCL experts so the others are
> 9 likely even more negative about Biocell."

Exhibit 40, Carty Tr. 296:14-25-297:1-9, 6/4/2025. Dr. Clemens was an Allergan consultant at that time. Carty Tr. 297:20-22, 6/4/2025.

[lvii] Chronic inflammation has been discussed as a potential contributing factor to the development of BIA-ALCL. *See* 2024 EURAPS Expert Consensus on breast implant associated-anaplastic large cell lymphoma**,** Sorotos, Michail et al., **J Plast Reconst & Aesth Surg**, Volume 110, 269 – 290; Lee, J.-H. (2021). "*Breast implant-associated anaplastic large-cell lymphoma (BIA-ALCL)."* **Yeungnam University J of Med, 38**(3), 175–182. https://doi.org/10.12701/yujm.2020.00801.

[lviii] Q. And whether you would recommend a prophylactic
10 explant or not is based on the patient's circumstances,
11 other potential risks to them from the explant surgery?
12 A. We recommend explant surgery for everybody with
13 Allergan textured breast implants.
14 Q. And is that because explant reduces the risk of
15 BIA- --
16 A. Yes.
Moser Tr. 67:9-16.

[lix] In 2008, Ms. Morales-Hernandez was diagnosed with breast cancer while in her forties, grade 1 invasive well-differentiated ductal carcinoma. She elected breast-conserving treatment and underwent a right breast lumpectomy with sentinel lymph node biopsy in January 2009, followed by chemotherapy, radiation therapy, and endocrine therapy with Tamoxifen. A follow-up excisional biopsy later that year demonstrated no residual cancer, and mammograms over the ensuing years remained benign or probably benign. In late 2015, imaging demonstrated suspicious findings in the right breast. Biopsy confirmed ductal carcinoma in situ (DCIS), nuclear grade 3, without invasive disease. Given this recurrence, mastectomy was recommended. Ms. Morales-Hernandez elected to proceed with bilateral mastectomies with staged reconstruction. MORALES-HERNANDEZD-10SDMG-00253, MORALES-HERNANDEZD-26GOPSA-00020-00024.

## CONCLUSION

The foregoing constitutes my report regarding the Allergan BIOCELL Textured Breast Implant litigation. I reserve the right to modify or extend my opinion in light of any new information, including submissions by any experts for Defendants, that becomes available to me.

DATED: February 12, 2026

SIGNED:

Elizabeth Hall-Findlay, M.D.